UNITED STATES DISTRICT COURT
for the DISTRICT OF MASSACHUSETTS

No. 2025-

TOMMY GIGUÈRE,
      Petitioner,

v.

STACY TARDIF,
      Respondent.

# VERIFIED COMPLAINT FOR RETURN OF MINOR CHILDRENTO CANADA PURSUANT TO THE APPLICABLE HAGUE CONVENTION and FEDERAL LAW, and other associated relief
# FILED UNDER SEAL

## 1.0    JURISDICTION AND VENUE.

1.1    <u>Jurisdiction</u> is based on the **Convention on the Civil Aspects of International Child Abduction** (hereafter **Convention**) (**Exhibit 1**), done at the Hague on 25 October 1980, effective in these United States on July 1, 1988 as published in the Federal Register, Vol. 53, No. 122, Friday, June 24, 1988, p. 23843. <sup>FN1</sup> The Petitioner also asks this Honorable Court to take Judicial Notice of the

---

[1] The objects of the Convention are:
    Article 1(a) to secure the prompt return of child wrongfully removed to or retained in any Contracting State; and
    Article 1(b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.
    Article 3 provides that the removal or the retention of a child is to be considered wrongful where -- "(a) it is in <u>breach of rights of custody</u> attributed to a person ... under the law of the State in which the child was habitually resident immediately before the removal or retention;" and "(b) at the time of the removal or retention<u> those rights were actually exercised</u> either jointly or alone, or would have been so exercised but for the removal or retention." (Emphasis supplied).

"**Analysis of Hague Convention,**" prepared by the U.S. State Department (**Exhibit 2**).

    1.2    Both the USA and Canada have been signatories (Contracting States) to the Convention at all relevant times.

    1.3    <u>Jurisdiction</u> is also based on the **International Child Abduction Remedies Act** (hereafter **ICARA**), 42 U.S.C. 11601, 11603(a) (**Exhibit 3**), [FN 2] which establishes procedures for implementation of the Convention in the United States. ICARA states at §11601:

> (b)(1)    It is the purpose of this chapter to establish procedures for the implementation of the Convention in the United States.
>
> (b)(2)    The provisions of this chapter are in addition to and not in lieu of the provisions of the Convention.
>
>                     \*\*\*
>
> (b)(4)    The Convention and this chapter empower the court in the United States to determine <u>only rights under the Convention and not the merits of any underlying child custody claims.</u> (Emphasis added).

---

[2] The **International Parental Kidnapping Crime Act** (IPKCA), 18 U.S.C. 1204 (1993) makes it a federal felony to remove a child from the USA or to retain a child (who has been in this country) outside the USA with intent to obstruct the lawful exercise of parental rights, it does not pertain to a parent bringing a child into the USA and retaining the child here against the language of a clear order from another country which gives a parent in that other country parental rights. However, the core values enunciated by IPKCA are clearly applicable to the case at bar.

1.4     The Petitioner asks this Honorable Court to take Judicial Notice of the **ICARA Regulations**, 22 CFR Part 94 - International Child Abduction (**Exhibit 4**).

1.5     As described in detail below, the Parties temporarily relocated to Massachusetts in 2022 in order to assist Respondent's parents with a business endeavor. At the time of the temporary relocation, the habitual residence of the Parties and their two **CHILDREN** was Quebec, Canada. The **CHILDREN'S** habitual residence did not change during their temporary stay in Massachusetts and, their habitual residence continues to be Quebec, Canada. During their temporary stay in Massachusetts the **CHILDREN** returned to their habitual residence in Quebec, no fewer than thirty-four (34) times between December, 2022 and August, 2024. Indeed, from the time of their entry into Massachusetts for temporary residence while assisting with the company opening, the family used every opportunity to return to Canada where the family ties remained.

1.6     On or about August 28, 2024, the parties' **CHILDREN** were wrongfully retained by the Respondent in Massachusetts without the Petitioner's consent which wrongful retention became more apparent on November 2, 2024 when the Respondent unilaterally renewed the **CHILDREN'S** i94 numbers without the Petitioner's knowledge or consent. Indeed, Petitioner made clear his objection to the **CHILDREN** remaining in Massachusetts after his permanent return to Quebec,

Canada in August, 2024. Nevertheless, despite Petitioner's clear objection to the **CHILDREN** remaining away from their habitual residence of Quebec, Canada, Respondent renewed the **CHILDREN'S** i94 numbers on November 2, 2024.

1.7  Because the Respondent continues to wrongfully retain the parties' **CHILDREN** in Massachusetts, today, February 25, 2025, the Petitioner is herewith filing this civil action, seeking a return of the **CHILDREN** to their habitual residence in Quebec, Canada and other associated relief.

1.8  The Petitioner's actions, as described in ¶¶ 1.6 and 1.7, respectively, are each sufficient to comply with the Convention's one-year jurisdictional requirement.

1.9  Before the parties' **CHILDREN** were wrongfully retained in the United States, Petitioner was exercising his rights to custody. The **CHILDREN** lived together with both parties in Quebec, Canada until December 27, 2022, and thereafter in Massachusetts until August 26, 2024 during which time both parties provided care to the **CHILDREN.**

1.10  Venue is based on the presence of the children in this District at 207 Beach Road, Unit D-1, Salisbury, MA 01952, as of the commencement of this action.

## 2.0   SUMMARY OF RELIEF REQUESTED.

2.1  This complaint seeks the immediate return to Quebec, Canada of the

parties' minor children, ███████████ who was born in Quebec, Canada and is now age 4 (hereafter referred to as **MG1**) and ███████████, who was born in Quebec, Canada and is now age 2 (hereafter referred to as **MG2**) and who were wrongfully retained in Massachusetts, United States by the Respondent.

2.2   This complaint asks this court to not take plenary or subject matter jurisdiction over issues of child custody, visitation or support, but jurisdiction only for the purpose of entering of: (a) an order the **CHILDREN** be returned to Quebec, Canada, which is the **CHILDREN'S** habitual residence; and (b) all necessary collateral orders.

### 3.0   PARTIES.

3.1   The Petitioner, **TOMMY GIGUÈRE** (hereafter **FATHER**), now age 33 [FN3] was born in Canada and lived in Quebec, Canada until December 27, 2022 when he resided temporarily in Massachusetts, USA. The **FATHER** returned, permanently, to Quebec, Canada on August 26, 2024 where he continues to live. **FATHER'S** address is ███████████████████████████
████████

---

[3] The dates of birth of the parties and their children are not set forth in this complaint in order to comply with applicable Privacy Rules.

3.2    The Respondent, **STACY TARDIF** (hereafter **MOTHER**), now age 28, was born in Canada. Mother lived in Quebec, Canada until December 27, 2022, when she temporarily moved to the United States. She has lived continuously in the United States ever since. **MOTHER** has been living in Massachusetts with the parties' **CHILDREN**. **MOTHER'S** address is ███████████████████████ ████.

### 4.0    FACTUAL BACKGROUND.

4.1    The parties were married on October 16, 2021 in Quebec, Canada. The parties were both born in Canada and lived there until December 27, 2022. The **FATHER** permanently returned to Quebec, Canada on August 26, 2024. The **MOTHER** has remained in Massachusetts, USA.

4.2    The parties have two children, **MG1**, born in April, 2020 in Saint-Georges, QC, Canada and **MG2,** born in April, 2022 in Saint-Georges, QC, Canada.

4.3    The **CHILDREN** are, by virtue of their births, citizens of Canada.

4.4    The **CHILDREN** have been issued passports from Canada.

4.5    The family lived together in Quebec, Canada until December 27, 2022.

4.6    **FATHER** and **MOTHER** both cared for the **CHILDREN** and exercised their custodial rights.

4.7 Around July 2021, the **MOTHER** informed the **FATHER** of her parents' intention to launch a transport business in the United States. The parties decided to take part in launching the project and applied for non-immigrant visa e2 in 2022, the maximum length of which is five (5) years, with mandatory renewal of the i94 admission numbers every two (2) years, forcing the family to leave the United States territory at the end of the two (2) years in order to renew the i94 admission numbers if they wished to extend their stay.

4.8 The parties agreed that they and the **CHILDREN** would return to Quebec, Canada at the latest at the end of five (5) years. However, it was also agreed upon by the parties that the **CHILDREN** would return to Quebec, Canada sooner should one of the parties make such a request, for any reason whatsoever. Since every renewal of the **CHILDREN'S** i94 admission numbers and the parties' own would be subject to both parties' consent, the lack of consent of one or the other would automatically trigger a return of the **CHILDREN** and the parties to their habitual residence of Quebec, Canada. Further, the issuance of the parties' and the **CHILDREN'S** visas were conditional on providing proof of the parties' intention to depart at the end of the duration they were legally authorized to stay.

4.9 On November 11, 2022, the parties and the **CHILDREN** entered the United States and obtained their i94 numbers, which were to expire on November 10,

2024. On December 27, 2022, the Parties and their **CHILDREN** temporarily relocated to Massachusetts.

4.10 When the family entered the United States on December 27, 2022, the trip was to be temporary in nature, as agreed upon by the parties and as evidenced by their non-immigrant visas, which authorized a maximum length of stay of five (5) years in the United States and mandatory renewal of i94 admission numbers every two (2) years to extend the parties' and the **CHILDREN'S** stay in the United States.

4.11 During the temporary move to the USA, the habitual residence of the parties and their **CHILDREN** remained Quebec as evidenced by the Parties' continuing to hold Quebec issued driver's licenses (**FATHER** renewed his Quebec driver's license while temporarily residing in Massachusetts), continuing to maintain Quebec medical insurance cards (something only available to people who reside in Quebec for more than six months of the year), and the family traveling to Quebec for every long weekend and holiday during their slightly less than two year temporary residence in Massachusetts. Further, the **CHILDREN** have maintained close ties to family and friends in Quebec while only making minimal new ties to Massachusetts. For example, the family first lived in a Haverhill apartment leased by the **MOTHER'S** parents' company for nine (9) months before purchasing a temporary residence in Salisbury in September, 2023. The Salisbury home was purchased strictly

as a financial investment because of the high cost of rent in Massachusetts.

4.12  As soon as March 2023, the **FATHER** voiced his wish that he, the children, and the **MOTHER** return to Canada.  Following discussion with the **MOTHER**, the **FATHER** accepted that the family would remain in Massachusetts until the expiration of their i94 numbers in November 2024.  A condition of Father's agreement that he and the **CHILDREN** remain in Massachusetts until November, 2024 with **MOTHER** was agreement that the family move to a place outside of **MOTHER'S** parents' control.[4]  At that time, **FATHER** made clear that he did not agree to renew the i94 admission numbers in November 2024 but that the parties would have a further discussion in November 2024 and if **FATHER** still wished for the family to return to Canada at that time, they would return.

4.13  Thereafter, in March, 2024, **FATHER** reiterated his position that the family return to Quebec before the end of 2024.  Between March and August, 2024 **MOTHER** continued to try to talk **FATHER** into changing his mind and remaining longer in Massachusetts.  While **FATHER** always listened to **MOTHER**, he never changed his mind.  The **FATHER** told the **MOTHER** on August 17, 19 and 27,

---

[4] **MOTHER'S** parents' constant presence became an issue in the parties' marriage when they arrived in Massachusetts.  The Parties were living in an apartment paid for by **MOTHER'S** parents' company and thus under **MOTHER'S** parents' control.  Because rent was so expensive in Massachusetts and the real estate market so strong, the Parties ultimately agreed to sell their marital home in Quebec and use the sale proceeds to purchase a temporary home in Massachusetts in hopes of the home appreciating in value during their temporary residence and thus becoming a good

2024 that he wanted the **CHILDREN** to return to Quebec, Canada with him immediately.

4.14   **FATHER'S** wish to return to Quebec was relayed to **MOTHER** multiple times leading up to and during August 2024.  **FATHER** moved back to Quebec, Canada on August 26, 2024 and expected **MOTHER** and the **CHILDREN** to join him in Quebec for Labor Day weekend.  On August 28, 2024, while the **FATHER** was in Canada, the **MOTHER** informed the **FATHER** that she wanted to remain in the United States and that neither she nor the **CHILDREN** would be returning to Quebec at that time.  Since August 2024, the **MOTHER** has actively attempted to restrict the **FATHER'S** time with the **CHILDREN** and limit the **CHILDREN'S** travel back to their habitual residence in Quebec, Canada.

4.15   The **MOTHER** filed a Complaint for Divorce in Massachusetts on September 4, 2024.  Thereafter, **MOTHER** only permitted **FATHER** to have parenting time with the **CHILDREN** by entering stipulations and court orders in her Massachusetts divorce case specifically outlining what time the **FATHER** may spend with the **CHILDREN** in Canada and Massachusetts.  If **FATHER** wanted to spend time with the **CHILDREN,** he had no choice but to participate in the process **MOTHER** initiated.   Accordingly, the Parties entered into a Stipulation in

---

financial investment to be capitalized upon when they returned permanently to Quebec.

**MOTHER'S** divorce action dated September 19, 2024 which permitted **FATHER** to have parenting time September 20 – 22, 2024. Thereafter, on October 7, 2024, the **MOTHER** filed a motion to establish temporary orders including certain financial issues and establishing custody / parenting time. **MOTHER** did not permit **FATHER** further parenting time after September 22nd despite **FATHER'S** repeated efforts, until October 11th at which time **FATHER** had to abide by **MOTHER'S** restrictions and demands if he wanted to see the **CHILDREN**.

4.16  On October 22, 2024, in response to the Complaint for Divorce the **FATHER** filed an answer and counterclaim seeking removal of the **CHILDREN** back to Quebec, Canada. At the time of his filing, **FATHER** was unclear about the proper avenues to seek the return of the children and believed a counterclaim seeking removal was his only option. **FATHER** was unaware of the Convention until November, 2024 which was after he had filed his answer and counterclaim in the divorce action.

4.17  On October 23, 2024 **FATHER** filed a verified motion with the Probate and Family Court for parenting time along with a Motion for Short Order of Notice and Speedy Hearing as he was told his Motion would not be heard until January 2, 2025. **MOTHER** continued to refuse **FATHER'S** efforts to see the children over FaceTime on a regular schedule and made Facetime calls particularly

challenging[5]. On November 21, 2024 the Parties entered into a Further Stipulation in **MOTHER'S** divorce action which provided **FATHER** with regular parenting time with the **CHILDREN**, every other weekend, one weekend in Canada and one in Massachusetts each month. **MOTHER** did not agree to **FATHER'S** request for regular FaceTime calls with the **CHILDREN**.

4.18   In October 2024, the **FATHER** again reiterated his wish that the **CHILDREN** return to their habitual residence of Quebec, Canada. **FATHER** was not satisfied that his answer and counterclaim for removal back to Quebec was his best option and continued to seek information about other avenues for the return of the **CHILDREN** to their habitual residence in Quebec, Canada.

4.19   On November 2, 2024, without the **FATHER'S** consent, the **MOTHER** proceeded to renew the i94 admission numbers for herself and the **CHILDREN** and has continued to wrongfully retain the **CHILDREN** in Massachusetts since that date.

4.20   **FATHER** continued to research in an effort to try to find a way to have the **CHILDREN** returned to Quebec, Canada as had been the Parties agreement

---

[5] At times, **MOTHER** ignored or refused Facetime requests. More frequently, she made the process overly complicated refusing to keep to a schedule. Instead, **MOTHER** would insist on Facetiming **FATHER** when the children were asleep showing him that they were sleeping, or traveling by car, making it impossible to have a meaningful engagement with the **CHILDREN** at such times. **MOTHER** has argued that a regular Facetime schedule would be too restrictive on her life.

when temporarily relocating to Massachusetts. It wasn't until November, 2024 that **FATHER** came to understand the Convention and how it applied to his situation. At that point he began an earnest search for counsel well versed in this area.

4.21 On January 21, 2025 **FATHER** filed an Application to the Central Authority in Quebec, Canada, seeking a return of the **CHILDREN** under Article 8 of the **Convention (Exhibit 5)**. On or about February 14, 2025 the Application was transmitted to the United States Central Authority. This petition follows.

4.22 In sum, **MOTHER** has violated the Convention and ICARA and **FATHER** seeks the Return of the **CHILDREN** to Quebec, Canada.

### 5.0   CURRENT CONTROVERSY.

5.1 In August 2024, **MOTHER** wrongfully retained **CHILDREN** in the United States in violation of the parties' agreement to return to Quebec, Canada and, on November 2, 2024, unilaterally renewed **CHILDREN'S** i94 numbers to extend their stay in the United States without **FATHER'S** advance knowledge or consent a further confirmation of **MOTHER'S** ongoing wrongful retention **(Exhibit 6)**.

5.2 Prior to the wrongful retention of the **CHILDREN** in the United States, **FATHER** exercised custody of the **CHILDREN**, with **MOTHER**, for all of their lives.

5.3    The **CHILDREN** are being wrongfully retained by **MOTHER** in this District. The **CHILDREN** are being wrongfully retained at a condominium occupied by **MOTHER** in Salisbury, Massachusetts.

5.5    **MOTHER** has restricted **FATHER'S** time with **CHILDREN** and the **CHILDREN'S** travel to their habitual residence in Quebec, Canada.

5.6    **MOTHER'S** conduct constitutes wrongful retention of **CHILDREN** in the United States within the meaning of Article 3 of the Convention.

## 6.0    IRREPARABLE HARM.

6.1    **MOTHER**'s wrongful retention of **CHILDREN** from **FATHER** and from their habitual residence in Quebec, Canada has caused immediate and irreparable harm to both **CHILDREN** and **FATHER**.

6.2    **MOTHER**'s violation of the Convention has attempted to divest the courts of Quebec, Canada of their exclusive jurisdiction over issues of **CHILDREN'S** legal and physical custody, to the irreparable harm of **CHILDREN** and **FATHER**.

6.3    The above-described conduct of **MOTHER** continues to cause irreparable harm to both **CHILDREN** and **FATHER**.

6.4    **MOTHER'S** wrongful retention of **CHILDREN** in this District has

improperly interrupted and minimized the **CHILDREN'S** time with **FATHER** attempting to sever the close and loving relationship between **CHILDREN and FATHER**.

6.5    An Order of Notice and a speedy hearing are required to ameliorate the irreparable harm to **CHILDREN** and **FATHER** and, as well, to comply with the Convention and ICARA.

## 7.0    THE LAW OF QUEBEC, CANADA RELEVANT TO THIS MATTER.

7.1    In Quebec, Canada both parents have legal rights and responsibilities for minor children (Quebec Civil Code, Title Four, Section 599 and 600), including the right to decide children's place of habitual residence which comes from parental authority, absent a judgment to the contrary.    **MOTHER** did not have a right to unilaterally keep the **CHILDREN** from their habitual residence of Quebec, Canada without the consent of **FATHER**. Indeed, Quebec Civil Code Title Four, Section 602 states "No unemancipated minor may leave his domicile without the consent of the person having parental authority." In this case such a leave would have to be agreed upon by both parties as they have joint parental authority. In the event of a disagreement between parents about **CHILDREN'S** residence, "the person having

parental authority may refer the matter to the court, which will decide in the interest of the child after fostering the conciliation of the parties." (Quebec Civil Code, Title Four, Section 604).

**8.0   RELIEF REQUESTED.**

**WHEREFORE, FATHER** respectfully requests this Honorable Court:

8.1   Issue an Order of Notice.

8.2   Upon the Return of the Order of Notice to find:

   a.   that **MOTHER's** conduct constitutes a wrongful retention of **CHILDREN** in the United States; and

   b.   that, at the time of the wrongful retention, **FATHER** was exercising his custodial, parenting and visitation rights (as defined under the laws of Quebec, Canada) within the meaning of Article 3 of the Convention.

8.3   Upon the Return of the Order of Notice to enter orders:

   a.   for the immediate return of **CHILDREN** back to their habitual residence in Quebec, Canada;

   b.   authorizing **FATHER** to immediately travel to the location of **CHILDREN** and bring them back to Quebec, Canada;

   c.   requiring **MOTHER** to immediately deliver **CHILDREN'S**

Canadian passports to the Clerk of this Court and to order that the said Clerk, in turn, deliver said documents to **FATHER** in order to transport the **CHILDREN** back to Quebec, Canada;

  d. that **MOTHER** may not apply for any United States passports or new Canadian passports for **CHILDREN**;

  e. that **MOTHER** may not apply for any new visas, i94 numbers or other immigration related documents or changes of status for the **CHILDREN**; and

  f. to provide certified copies of the Order(s) to the US Department of State, Office of Passport Policy and Advisory Services, 1111 19th Street N.W., Suite 260, Washington, D.C. 20522-1705 and to the appropriate Canadian authorities;

 8.5 to hold a prompt hearing on the prayers of this Complaint;

 8.6 to order that all matters relating to **CHILDREN**, including custody, care, control, access, abuse prevention, and visitation be heard in Quebec, Canada, pursuant to the applicable provisions of Federal law, including the Hague Convention and specifically staying that portion of **MOTHER'S** divorce complaint and **FATHER'S** counterclaim now pending in Essex Probate and Family Court Docket No. 24D-1750DR relating to the custody, care, control, access, abuse prevention, and visitation of the **CHILDREN**;

 8.7 to restrain **MOTHER** from commencing any further court action

concerning **CHILDREN** in any United States court, including restraining her from filing any further action in any Massachusetts state court for any reason relating to **CHILDREN** or **FATHER**;

    8.8    to order **MOTHER** to pay **FATHER's** expenses, costs and legal fees as required by ICARA, 42 U.S.C. 11607 (b) (3); and

    8.9    to make such further orders as this Honorable Court deems mete and just.

February 25, 2025

Respectfully submitted,

**Tommy Giguère,**
By his attorneys,

By: *Wendy O. Hickey*
Wendy O. Hickey, BBO #657457
Brick, Jones, McBrien & Hickey LLP
250 First Ave. Suite 201
Needham, MA 02494
P: (617) 494-1227
wendy@brickjones.com

## VERIFICATION

I, Tommy Giguère, state that the facts contained within this complaint are true to the best of my knowledge and belief, and as to those upon belief, I believe them to be true.

Signed under the pains and penalties of perjury this 25th day of February, 2025.

*Tommy Giguère*
ID rnMVgJ4kRtqTwZtSEwdNiY5q
Tommy Giguère

## eSignature Details

**Signer ID:**     **rnMVqJ4kRtqTwZtSEwdNiY5q**
Signed by:        Tommy Giguere
Sent to email:    tommgiguere1991@gmail.com
IP Address:       142.169.77.137
Signed at:        Feb 25 2025, 12:10 pm EST