

U. S. Department of State

# APPLICATION UNDER THE HAGUE CONVENTION ON THE CIVIL ASPECTS OF INTERNATIONAL CHILD ABDUCTION

OMB CONTROL NO. 1405-0076
EXPIRES: 01-31-2027
Estimated Burden - 1 Hour*

*FILL OUT ALL SECTIONS ON BOTH SIDES*
*Provide information below to the extent that it is available.*

This is an application for the  [X] Return of   [ ] Access to the child/children listed below.  *(Select only one)*

## I. FIRST CHILD SUBJECT OF APPLICATION

| Child's Name (Last, First, MI) | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

| Address (Habitual Residence at Time of Removal or Retention) | U.S. SSN | Passport/Identity Card |
|---|---|---|
| [redacted] | N/A | Country [redacted] / Number [redacted] |

| Address of Child's Current Location (If Known) | Telephone Number of Child's Current Location (If Known) | Citizenship(s) |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

| Height | Weight | Color of Hair | Color of Eyes |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |

| Name of Child's Father (if not Listed in Section II or III) | Name of Child's Mother (if not Listed in Section II or III) |
|---|---|
|  |  |

## II. APPLICANT (PERSON SEEKING RETURN OF/ACCESS TO CHILD/CHILDREN)

| Name (Last, First, MI) | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|
| GIGUÈRE, Tommy | [redacted] | [redacted] |

| Relationship to Child/ren | Citizenship(s) | U.S. SSN | Passport/Identity Card |
|---|---|---|---|
| FATHER | CANADIAN |  | Country CANADA / Number [redacted] |

| Current Address | Telephone Number | Email Address |
|---|---|---|
| [redacted] | [redacted] | [redacted] |

| Preferred Language | Occupation |
|---|---|
| FRENCH/ENGLISH | EXCAVATOR OPERATOR |

| Name, Address, and Telephone Number of Legal Advisor | |
|---|---|
| CAROLINE HARNOIS, LAVERY DE BILLY L.L.C<br>4000-1 PLACE VILLE-MARIE MONTREAL QC CANADA H3B 2B6<br>(514) 877-2972 / charnois@lavery.ca | WENDY O. HICKEY, ATTORNEY, BRICK, JONES, MCBRIAN&HICK<br>250 FIRST AVE, SUITE 201, NEEDHAM, MA USA 02494<br>(617) 494-1227 / whickey@brickjones.com |

## III. PERSON ALLEGED TO HAVE WRONGFULLY REMOVED OR RETAINED THE CHILD/CHILDREN

| Name (Last, First, MI) | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|
| TARDIF, Stacy | [redacted] | [redacted] |

| Relationship to Child/ren | Citizenship(s) | U.S. SSN | Passport/Identity Card |
|---|---|---|---|
| MOTHER | CANADIAN |  | Country CANADA / Number [redacted] |

| Occupation, Name, and Address of Employer (If Known) | Known Aliases |
|---|---|
| [redacted] | N/A |

| Address and Telephone Number of Current Location |
|---|
| [redacted] |

| Height | Weight | Color of Hair | Color of Eyes |
|---|---|---|---|
| [redacted] | approx. [redacted] | [redacted] | [redacted] |

DS-3013
01-2023

Page 1 of 5

## IV. ADDITIONAL CHILD/CHILDREN Subject of Application

| Child's Name (Last, First, MI) | | Date of Birth (mm-dd-yyyy) | Place of Birth | |
|---|---|---|---|---|
| ▮▮▮▮▮▮▮▮▮▮ | | ▮▮▮▮ | ▮▮▮▮ | |
| Address (Habitual Residence at Time of Removal or Retention) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | | U.S. SSN N/A | Passport/Identity Card Country ▮▮▮ | |
| Address and Telephone Number of Child's Current Location (If Known) ▮▮▮▮▮▮ | | | Number ▮▮▮▮ | |
| | | | Citizenship(s) ▮▮▮ | |
| Height ▮▮▮ | Weight ▮▮▮ | Color of Hair ▮▮▮ | Color of Eyes ▮▮▮ | |
| Name of Child's Father (if not Listed in Section II or III) | | Name of Child's Mother (if not Listed in Section II or III) | | |

| Child's Name (Last, First, MI) | | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|---|
| | | | |
| Address (Habitual Residence at Time of Removal or Retention) | | U.S. SSN | Passport/Identity Card Country Number |
| Address and Telephone Number of Child's Current Location (If Known) | | | Citizenship(s) |
| Height | Weight | Color of Hair | Color of Eyes |
| Name of Child's Father (if not Listed in Section II or III) | | Name of Child's Mother (if not Listed in Section II or III) | |

| Child's Name (Last, First, MI) | | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|---|
| | | | |
| Address (Habitual Residence at Time of Removal or Retention) | | U.S. SSN | Passport/Identity Card Country Number |
| Address and Telephone Number of Child's Current Location (If Known) | | | Citizenship(s) |
| Height | Weight | Color of Hair | Color of Eyes |
| Name of Child's Father (if not Listed in Section II or III) | | Name of Child's Mother (if not Listed in Section II or III) | |

| Child's Name (Last, First, MI) | | Date of Birth (mm-dd-yyyy) | Place of Birth |
|---|---|---|---|
| | | | |
| Address (Habitual Residence at Time of Removal or Retention) | | U.S. SSN | Passport/Identity Card Country Number |
| Address and Telephone Number of Child's Current Location (If Known) | | | Citizenship(s) |
| Height | Weight | Color of Hair | Color of Eyes |
| Name of Child's Father (if not Listed in Section II or III) | | Name of Child's Mother (if not Listed in Section II or III) | |

ADDITIONAL SHEETS MAY BE ATTACHED

## V. CIRCUMSTANCES OF THE WRONGFUL REMOVAL OR RETENTION

**Date of Wrongful Removal or Retention** (mm-dd-yyyy)
*Use approximate date if exact date unknown*
08-28-2024

**Place of Wrongful Removal or Retention**
SALISBURY, MA USA

**Circumstances of Abduction** (Additional sheets may be attached)
SEE ANNEX

## VI. FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST

**Habitual Residence -**
*(Please provide details related to the child's place of habitual residence.)*
SEE ANNEX

**Basis of Applicants' Custody Rights**
Required *documentation, please select at least one*

Supporting Documentation *(Please check applicable boxes and attach.)*

[x] Law/Statute Relating to Custody for Child's Residence at Time of Alleged Removal or Retention

[ ] Court Order in Effect at Time of Alleged Removal or Retention

[ ] Legally Binding Agreement

[x] Other  see annex

Are civil proceedings currently in progress? *(If yes, please provide details.)*
[redacted]

ADDITIONAL SHEETS MAY BE ATTACHED

## VII. PROPOSED ARRANGEMENTS FOR RETURN TRAVEL OF CHILD/CHILDREN

How will child return (i.e. flight)? Will you or someone you designate as a power of attorney accompany the child? Please provide as many details as possible.

UPON RECEIPT OF A JUDGMENT FROM THE RELEVANT AMERICAN JUDICIAL AUTHORITIES AUTHORIZING ME TO DO SO, I WILL TRAVEL TO THE LOCATION OF MY CHILDREN AND BRING THEM TO VALLÉE-JUNCTION, QUEBEC, CANADA, BY CAR, WHERE I WILL ASK THAT THEIR CUSTODY BE DECIDED UPON BY THE SUPERIOR COURT OF QUEBEC.

## VIII. OTHER PERSONS WITH ADDITIONAL INFORMATION RELATING TO THE WHEREABOUTS OF THE CHILD/CHILDREN

Preferably, in country of child's current location. Please include, name, relationship to child/parent, address, and contact information.

THE MATERNAL GRANPARENTS, WHO ALSO RESIDE IN SALISBURY, MA, USA, PART-TIME ARE AWARE OF THEIR DAUGHTER'S AND THE CHILDREN'S WHEREABOUTS:

[REDACTED]

## IX. SUPPORTING DOCUMENTATION AND OTHER RELEVANT INFORMATION

Parents married? [X] Yes [ ] No  If so, date: 10/16/21  If yes, marriage certificate must be attached.
Parents divorced? [ ] Yes [ ] No  If so, date: _____  If yes, divorce decree must be attached.
Custody Order existing at time of removal or retention? If so, please provide a copy of the order.
NO CUSTODY ORDER EXISTED AT THE TIME OF RETENTION.

Applicant Signature *(Sign in Blue Ink)* [signature]

Date *(mm-dd-yyyy)*: 01-21-2025

DS-3013

Page 4 of 5

## PRIVACY ACT STATEMENT

**AUTHORITY**: The information solicited on this form is requested under the authority of the International Child Abduction Remedies Act, Public Law 100-300, codified at 22 U.S.C. 9001 et. seq..

**PURPOSE**: The primary purpose for soliciting the information is to initiate the processing of a Hague Abduction Convention with the U.S. Central Authority.

Furnishing your social security number, as well as the other information requested on this form, is voluntary. The social security number may be used, if necessary, to authenticate the identities of individuals that are listed in the applicant claim.

**ROUTINE USES**: The information will be used to assist in facilitating operations under the Convention and may be provided to governments of member countries, bar associations and legal aid services, local police, social service agencies, attorneys, and parents. This information may also be released on a need-to-know basis to other government agencies, including foreign agencies, having statutory or other lawful authority to gain access to such information. More information on the Routine Uses for the system can be found in the System of Records Notice State-05, Overseas Citizens Services Records and the Department's Prefatory Statement of Routine Uses.

**DISCLOSURE**: Providing the information requested on this form, including the child's social security number, is voluntary. Failure to submit this form or to provide all the requested information may result in delay in the processing of your application.

## PAPERWORK REDUCTION ACT STATEMENT

*Public reporting burden for this collection of information is estimated to average 60 minutes per response, including time required for searching existing data sources, gathering the necessary data, providing the information required, and reviewing the final collection. You do not have to provide this information requested if the OMB approval has expired. Send comments on the accuracy of this estimate of the burden and recommendations for reducing it to: L/CA, 2201 C St., NW, SA-17; 10th Floor, U.S. Department of State, Washington, DC 20522-1710.

Docusign Envelope ID: B4CEA9DA-9225-4D2D-B9BA-9ABB02874B95
Case 1:25-cv-10468-IT    Document 1-7    Filed 02/26/25    Page 6 of 17

000006

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

## FATHER'S AFFIDAVIT
In Response To Sections V And VI Of The
*Application Under The Hague Convention On The Aspects Of International Child Abduction*

I, the undersigned, Tommy Giguère, father of the children ███████████, domiciled and residing at ████████████████████████████, solemnly declare as follows:

### BACKGROUND

1. The mother of the children and I were both born in Saint-Georges, Quebec (QC), Canada, as it appears from the Application Under The Hague Convention on the Aspects of International Child Abduction;

2. On October 16, 2021, we were also married in city neighboring Saint-Georges, QC, Canada, namely Saint-Benoit-Labre, as it appears from our marriage certificate, annexed herein;

3. Our children, ████████████, were born in ████████████████ on ████████, and ████████████, respectively, as it appears from the children's *Birth Certificated,* annexed herein;

4. Since the beginning of our relationship, through the birth of our children and our marriage, we have always lived in Vallée-Jonction, QC, Canada;

5. Around July 2021, the mother of the children informed me of her parents' intention to launch a transport business in the United States;

6. We decided to take part in launching the project and applied for a non-immigrant visa e2 in 2022, the maximum length of which is five (5) years, with mandatory renewal of the i94 admission numbers every two (2) years, forcing us to leave the US territory at the end of the two (2) years in order to renew the i94 admission numbers, should we wish to extend our stay;

7. As such, prior to our departure, we agreed that the children and ourselves would return to Canada at the latest at the end of the five (5) year stay. However, it was also agreed upon that the children and us would return to Canada sooner should one of us request it, for any reason whatsoever. In fact, since every renewal of the children's i94 admission numbers and our own would be subject to both of our consents, and therefore, the lack of the consent of one or the other would automatically trigger a return of the children and the parents to Canada, as it appears from the various family members' affidavits, annexed herein;

8. In addition to the clear agreement between the mother and myself that our stay would be temporary, the issuance of our and the children's visas were conditional to providing a proof of our intention to the depart at the end of the duration we were legally authorized to stay;

9. As such, as principal applicant, the mother signed documents attesting to our intent to depart at the end of the visa, as it appears from the mother's *Statement of intent to depart,* annexed herein;

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

10. The mother's parents' company was providing us an apartment in Haverhill, MA, for the duration of our stay and we conserved our family residence located at ███ ███████████████████████, Canada where we were to return at the end of our stay in Massachusetts;

11. On November 11, 2022, the mother and I accompanied by the children entered USA with our non-immigrant visas which marked the start of the two-year validity of our i94 numbers, which were to expire on November 10, 2024, as it appears from the children's and father's passport, visas and entry stamps, annexed herein. However, we only officially moved to Haverhill, Massachusetts on December 27, 2022, as it appears from the i94 travel history;

12. As soon as March 2023, I voiced my wish that the children, their mother and I return to Canada, as the living situation was making it impossible for me to remain in Massachusetts;

13. In fact, the maternal grandparents' lack of regard for myself and our family space in the apartment they provided (by imposing their presence and their opinions), made me feel isolated;

14. Following discussion with the mother, I accepted that we remain in Massachusetts until the expiration of our i94 admission numbers in November 2024, conditional to us moving to an apartment over which her parents would have no rights and where they could not impose their presence;

15. Following multiple searches, we came to the conclusion that the apartment rental market was very high, making renting a financially bad decision;

16. Although our stay was only to be temporary, we decided to sell our property in Vallée-Jonction, QC, Canada in order to purchase one in Salisbury, MA, as this would enable us to take advantage of an expected increase in the residential property market, when the time would come to sell, upon our return to Canada;

## V. CIRCUMSTANCES OF THE WRONGFUL REMOVAL OR RETENTION

17. As of March 2023, I began voicing my unhappiness with our situation in Massachusetts, and I requested that the children, the mother and I return to Canada;

18. In March 2024, after a family trip to Vallée-Jonction having spent some time with my family, I informed the mother that I wanted us and the children to return to Canada before the end of the year, and therefore I did not agree to renew the i94 admission numbers in November 2024;

19. Discussions continued over several months, until August 2024;

20. The discussions that occurred between the mother and I in the period leading up to August 2024 were unfruitful, when ultimately, while I was waiting for her and the children to join me in Canada, the mother informed me of her wish to remain in the USA and that she and the children would not return to Canada, in contravention to our agreement that the stay in the USA was temporary and contrary to the common intention of returning to Canada at the latest at the end of the stay, by expiration of status or request of the mother or the father;

21. In the context of the same discussions, I told the mother three (3) times over a period of eight (8) days, more specifically on or around August 17, August 19, and August 27th, that I wanted the children to return to Canada with me, right away;

Docusign Envelope ID: B4CEA50A-932B-4CVD-B9B4-0ABB02874593
Case 1:25-cv-10468-IT   Document 1-7   Filed 02/26/25   Page 8 of 17

000008

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

22. On August 28, 2024, while I was in Vallée-Jonction, where she and the children were to join me for the Labor Day weekend, the mother informed me that she wanted to remain in the USA and that neither her nor the children would be returning to Canada, which I could not accept;

23. Since August 2024, the mother has been actively attempting to prevent me from spending a maximum amount of time with our daughters or the children from visiting me in Canada invoking that the children visiting me in Canada every other week would constitute too much travel. However, she does not hesitate to impose several hours of travel on the children such as for skiing or vacationing in Florida;

24. The mother ultimately undertook divorce proceedings, including custody on September 4, 2024;

25. Around the weekend of October 12 and 13th, I again reiterated my wish that the children return to Canada;

26. On October 22, 2024, in response to the mother's application, I requested the return of the children to Quebec, Canada, not being aware of the existence of the 1980 Hague Convention on the Civil Aspects of International Child Abduction, as it appears from the Defendant's Answer & Counterclaim To Plaintiff's Complaint For Divorce Pursuant To G.L. C. 208 §1b Filed September 4, 2024, annexed herein;

27. On November 2, 2024, without my consent, the mother proceeded to the renewal of the i94 admission numbers for herself and the children ███████████ as it appears from the i94 official website, annexed herein;

28. On November 6, 2024, the mother filed the *Plaintiff's Answer to Defendant's Counterclaim for Divorce,* wherein she confirms her intention to not return to children to Vallée-Jonction, Quebec, Canada, by opposing my request for return, as it appears from copy of the proceeding, annexed herein;

29. Temporary agreements/judgment intervened in the file on November 21, 2024, which was incorporated into a Temporary Order on December 2, 2024, as it appears from the *Agreement* and the *Judgment,* annexed herein;

30. Throughout the process, I was not informed of the existence of the 1980 Hague Convention on the Civil Aspects of International Child Abduction. This delayed the submission of my application for the return of the children. I ultimately discovered it myself, which enabled me to seek the advice of attorneys specialized in the matter;

31. As such, the wrongful retention occurred on August 28, 2024, which became further apparent on November 2, 2024, by the mother's unilateral renewal of the children's i94 admission numbers, and is ongoing since then. The mother of the children ███ and ███████ is refusing to return them to their place of habitual residence, Vallée-Jonction, Quebec, Canada;

32. In fact, the return of the children to Canada should have taken place on August 28, 2024, or the latest at the time of the expiration of their i94 admission numbers, the renewal of which required the consent of both parents;

33. It appears that the mother further undertook to submit a Green Card application including the children and myself in it, without my consent, as it appears from the messages exchanges on December 3 and 4, 2024, annexed herein;

34. At the time of the retention, our family was temporarily staying in Salisbury, Massachusetts. Prior to our departure for Massachusetts, the mother and I agreed

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

that both parents had to be consenting, throughout the entirety of our temporary stay, in order for the family to remain in Massachusetts until the expiration of our five-year visa, failing which we would immediately return to Canada;

35. Based on the agreement, further detailed in section VI, in March 2024, I informed the mother that I did not want to renew our i94 admission numbers and that I wish to permanently return to Canada before the end of the year. However, the mother is reneging on the agreement which intervened between us, wherein our stay in the USA was temporary and a return to Canada would take place at any given moment if either one of us expressed a wish to do so. In fact, in August 2024, within the context of discussions regarding the non-renewal of the i94 numbers, the mother told me that she did not intend to return to Canada, and that the children would not return to Canada either;

36. I have permanently remained in Canada subsequent to the mother's retention of our daughters, with the exception of a few short-term visits to Massachusetts to visit our daughters. I reside at ;

37. I wish that my daughters return to their place of habitual residence, Vallée-Jonction, Quebec, Canada;

38. At the time of the retention, I had legal custody rights in accordance with the law of the children's habitual residence, namely Quebec, Canada. In fact, according to Quebec law, and more specifically sections 599 and 600 of the Civil Code of Quebec, given that there were no judgments to the contrary at the time of retention, I share with the mother the rights and duties of custody, including the right to decide of our children's place of habitual residence. Neither parent may make unilateral decisions with respect to the child's residence and in case of disagreement, the Court must give authorization to such relocation, as it appears from the excerpts of the *Civil Code of Quebec,* annexed herein;

39. However, against my wish, and without my consent, the mother applied to renew the children's i94 admission numbers and to obtain green cards for herself and our daughters, as admitted by herself in her text messages dated December 3rd and 4th, 2024 annexed herein. She therefore intends to remain in the Massachusetts permanently with our daughters, contrary to our agreement;

**VI. FACTUAL AND LEGAL JUSTIFICATION FOR THE REQUEST**
*Habitual residence – (Please provide details related to the child's place of habitual residence)*

40. The children were born in and , respectively and habitually reside in since their births, as it appears from the attestation of daycare services, vaccination record and medical checkup records, annexed herein;

41. Around July 2021, the mother of the children informed me of her parents' intention to launch a transport business in the United States. We decided to take part in launching the project and applied for a non-immigrant visa e2 in 2022, the maximum length of which five (5) years, with mandatory renewal of the i94 admission numbers every two (2) years;

42. We agreed to return to Canada at the latest at the end of the five (5) year stay. However, it was also agreed upon that ourselves and the children would return


sooner, should the mother or I request it, for any reason whatsoever. In addition, we both had to agree to extend the stay every two (2) years, at the time of the renewal of the i94 admission numbers;

43. In addition to the agreement between the mother and myself, we were legally obligated to return to Canada at the end of our stay. In fact, as part of the application process to obtain e2 visas, the applicants had to have and maintain an intent to depart from the USA at the end of the authorized stay. As principal applicant, the mother signed documents attesting to this;

44. ██████, the mother's parents' company began operations in Salisbury, MA, and we were to temporarily reside in an apartment provided by the company located in Haverhill, MA;

45. Throughout our stay in Salisbury, MA, we did not create any considerable ties to the USA. Most of our time was spent working, taking care of our daughters or together with the mother's parents, when they were not in Canada. In fact, we used every opportunity to return to Canada, where we maintained our ties;

46. In Quebec, Canada, we both have family, my parents being in QC, Canada, as well as her parents spending part of their time here;

47. In Quebec, Canada, we also continued to operate our bank accounts, the mother even receiving some employment income from ██████ (the Canadian transport company owned by the mother's parents) in her account at ██████, a financial institution based in Quebec, as it appears from the ██████ bank account statement for the month of July 2024, annexed herein;

48. In December 2024, the mother even attended ██████ employee Christmas Party in Saint-Georges, QC, Canada;

49. In Quebec, Canada, we conserved our driver's licences issued by the local authority, due to our intention to return, as it appears from the mother's driver's licence and validity check results, annexes herein. In fact, I even renewed mine in November 2023, as it appears from my driver's licence, annexed herein;

50. In Quebec, Canada, we conserved the children's medical insurance cards, which are privileges awarded only to Quebec residents who spend at least six (6) months per year in the province and which provide access to free health care;

51. Throughout the approximately two (2) years we temporarily resided in Salisbury, we travelled with the children to Vallée-Jonction, QC Canada approximately thirty-four (34) times, as it appears from my and the children's i94 travel histories, annexed herein;

52. All long weekends for holidays in the USA and vacations were spent in Vallée-Jonction, QC;

53. The children maintain close ties with various family members and friends. They are close to their paternal aunt and her son, their cousin, ██████, whom they are always very excited to see. They are also close to ██████, the daughter of one of my cousins, whom they often talk about. ██████ also maintains a friendship with ██████, a girl with whom she used to attend daycare in Vallée-Jonction, QC;

54. In addition to the family trips to Vallée-Jonction, I travelled alone several additional times, accumulating approximately fifty (50) trips between August 2023 and December 2024 alone. The additional trips alone were often as part of the mother's

APPLICANT : GIGUÈRE, Tommy  
CHILDREN :

parents' transportation business, but I always used this opportunity to connect with friends and family;

55. In fact, in addition to our frequent visits, we maintained our residence at █████████ until spring 2023. We decided to sell it as to enable us to procure a more comfortable temporary living arrangement in Massachusetts, which would be sold upon return to Canada;

56. Although we ultimately sold the house located at █████████ QC, we maintained a residence at █████████ my parents' residence. Here, both the children and the mother and I had our dedicated spaces, a bedroom for the mother and I, and a bedroom for the children. This address was provided as our residential address to both banks and other institutions. Both the mother and myself received numerous correspondences to this address, as it appears from the proof of letters receive at █████████, annexed herein;

57. Due to all the above, I strongly believe that at the time of retention, the mother, myself and the children were habitually residing in Vallée-Jonction. Quebec, Canada;

58. As further detailed above, since March 2024, I have requested numerous times that the children return to Canada in accordance with the agreement intervened between the mother and myself prior to our departure for the United States;

59. My requests were seeking for the return to take plan immediately, but the latest time the return could have taken place was in November 2024;

60. Contrary to my requests, on November 2, 2024, the mother renewed the children's i94 numbers without my consent, thereby marking the confirming the unlawful retention of the children which had been ongoing since August 2024;

61. In renewing the i94 numbers, the mother reaffirmed her undertaking that the stay be temporary;

62. The mother's status in the USA is also dependent on her capacity to be financially autonomous, which she is not considering her limited pay, thereby potentially risking her legal status and that of the children;

63. In Canada, both the mother and the children benefit from all the rights attached to their residence in Quebec, including free medical care and others;

64. It appears that the mother further undertook to submit a Green Card application including the children and myself in it, without my consent, as it appears from the messages exchanges on December 3 and 4, 2024, annexed herein;

## ANNEXES

With the application, I provide:

1. Completed form for the return of the children's █████████ return;
2. Children's birth certificates, and translation where applicable;
3. Photos of the children;
4. Parent's marriage certificate, and translation;
5. Proof of retention/unilateral actions by the mother:

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

a. Renewal of i94 admission numbers for ▇▇▇▇▇;
b. Renewal of i94 admission number for the mother;
c. Text messages from December 3 and 4, 2024, regarding the mother's green card application, and translation;

6. Proof of temporary stay:

   a. Mother's statement of intent to depart;
   b. Father's passport, visa and entry stamp;
   c. ▇▇▇ passport, visa and entry stamp;
   d. ▇▇▇ passport, visa and entry stamp;
   a. Affidavit of ▇▇ Giguère and translation;
   b. Affidavit of ▇▇▇ Giguère;
   c. Affidavit of ▇▇ Giroux;
   d. Affidavit of ▇▇ Quirion;

7. Proof of habitual residence;

   a. ▇▇▇ bank account statements, and translation;
   b. Father's driver's licence, and translation;
   c. Mother's driver's licence and translation;
   d. Mother's driver's licence validity check;
   e. Father's i94 travel history;
   f. ▇▇▇ i94 travel history;
   g. ▇▇▇ i94 travel history;
   h. Tex messages with the father's parents - proof of letters received at ▇▇▇ and translation;
   i. ▇▇▇ baptism certificate;
   j. ▇▇▇ baptism certificate;
   k. ▇▇▇ i94 travel history;
   l. ▇▇▇ i94 travel history;
   m. Attestation of childcare service received for ▇▇▇;
   n. Attestation of childcare service received for ▇▇▇;
   o. ▇▇▇ vaccination record;
   p. ▇▇▇ vaccination record;
   q. ▇▇▇ infant medical checkups;
   r. ▇▇▇ 18+ month checkup;

8. Excerpt from the Civil Code of Quebec;

APPLICANT : GIGUÈRE, Tommy
CHILDREN :

9. Massachusetts proceedings:

   a. Copy of the temporary order of December 2, 2024 and Agreement of November 21, 2024;

   b. Copy of Father's counterclaim;

   c. Copy of Plaintiff's Answer to Defendant's Counterclaim for Divorce;

Montreal, this February 11, 2025

SOLEMNLY AFFIRMED BEFORE ME
at Montreal this February 11, 2025
By videoconference

_____
Signé par:
6EB4E09688FE4E7...
**TOMMY GIGUÈRE**
Father

_____
Commissioner for Oaths



Victoria Morris
235925

**docusign**

## Certificat de réalisation

Identifiant d'enveloppe: B41EADDA-932E-4B2D-B8BA-AABB02874595  
Objet: Complétez avec Docusign : Annex to Application (2).docx  
Enveloppe source:  
Nombre de pages du document: 8  Signatures: 1  
Nombre de pages du certificat: 4  Paraphe: 0  
Signature dirigée: Activé  
Horodatage de l'enveloppe: Activé  
Fuseau horaire: (UTC-08:00) Heure normale du Pacifique (États-Unis et Canada)

État: Complétée

Émetteur de l'enveloppe:  
Victoria Morris  
BUREAU 4000, 1, PLACE VILLE MARIE  
Montreal, QC  H3B 4M4  
VMorris@lavery.ca  
Adresse IP: 52.229.68.132

### Suivi du dossier
État: Original  
  11/02/2025 12:02:24

Titulaire: Victoria Morris  
VMorris@lavery.ca

Emplacement: DocuSign

| Événements de signataire | Signature | Horodatage |
|---|---|---|
| TOMMY GIGUÈRE<br>tommgiguere1991@gmail.com<br>Niveau de sécurité: E-mail, Authentification de compte (aucune) | Signé par : [signature]<br>6EB4E09688FE4E7...<br><br>Sélection d'une signature : Écrit sur un appareil<br>En utilisant l'adresse IP: 142.169.240.157<br>Signé à l'aide d'un périphérique mobile | Envoyée: 11/02/2025 12:02:56<br>Consultée: 11/02/2025 12:04:34<br>Signée: 11/02/2025 12:22:48 |

**Divulgation relative aux Signatures et aux Dossiers électroniques:**  
  Accepté: 11/02/2025 12:04:34  
  ID: f4bf0662-9efe-4e06-a709-c3bd9a161020

| Événements de signataire en personne | Signature | Horodatage |
|---|---|---|

| Événements de livraison à l'éditeur | État | Horodatage |
|---|---|---|

| Événements de livraison à l'agent | État | Horodatage |
|---|---|---|

| Événements de livraison intermédiaire | État | Horodatage |
|---|---|---|

| Événements de livraison certifiée | État | Horodatage |
|---|---|---|

| Événements de copie carbone | État | Horodatage |
|---|---|---|

| Événements de témoins | Signature | Horodatage |
|---|---|---|

| Événements notariaux | Signature | Horodatage |
|---|---|---|

| Récapitulatif des événements de l'enveloppe | État | Horodatages |
|---|---|---|
| Enveloppe envoyée | Haché/crypté | 11/02/2025 12:02:56 |
| Livraison certifiée | Sécurité vérifiée | 11/02/2025 12:04:34 |
| Signature complétée | Sécurité vérifiée | 11/02/2025 12:22:48 |
| Complétée | Sécurité vérifiée | 11/02/2025 12:22:48 |

| Événements de paiement | État | Horodatages |
|---|---|---|

**Divulgation relative aux Signatures et aux Dossiers électroniques**

Divulgation relative aux signatures et aux dossiers électroniques créée le 07/02/2020 19:54:08
Parties convenues: TOMMY GIGUÈRE

Case 1:25-cv-10468-IT    Document 1-7    Filed 02/26/25    Page 15 of 17

000015

## ELECTRONIC RECORD AND SIGNATURE DISCLOSURE

From time to time, Lavery de Billy (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Lavery de Billy:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: rjalal@lavery.ca

**To advise Lavery de Billy of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at rjalal@lavery.ca and in the body of such request you must state: your previous email address, your new email address.  We do not require any other information from you to change your email address.

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Lavery de Billy**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to rjalal@lavery.ca and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Lavery de Billy**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to rjalal@lavery.ca and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process..

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Lavery de Billy as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Lavery de Billy during the course of your relationship with Lavery de Billy.