UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TOMMY GIGUÈRE, | * |
| | * |
| Petitioner, | * |
| | * |
| v. | * Civil Action No. 1:25-cv-10468-IT |
| | * |
| STACEY TARDIF, | * |
| | * |
| Respondent. | * |
| | * |

MEMORANDUM & ORDER

May 5, 2025

TALWANI, D.J.

Petitioner Tommy Giguere filed this matter against Respondent Stacy Tardif pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11,670, 1343 U.N.T.S. 89 ("Hague Convention"), and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. §§ 9001–11, which implements the Hague Convention. Pending before the court are Giguere's Motion to Restrain Respondent from Registering the Parties' Child for School in Massachusetts [Doc. No. 7] and Tardif's Motion to Dismiss the Verified Complaint [Doc. No. 8] for lack of subject matter jurisdiction and failure to state a claim.

**I.     Motion to Dismiss for Lack of Subject Matter Jurisdiction**

"Federal courts are obliged to resolve questions pertaining to subject-matter jurisdiction before addressing the merits of a case." Acosta-Ramirez v. Banco Popular de Puerto Rico, 712 F.3d 14, 18 (1st Cir. 2013). Giguere asserts jurisdiction based on the Hague Convention, to which the United States and Canada are both signatories, and which applies "to any child who was habitually resident in a Contracting State immediately before any breach of custody or

access rights[,]" Hague Convention, art. 4; and ICARA, which provides that "[t]he courts of the States and the United States district courts shall have concurrent original jurisdiction of actions arising under the [Hague] Convention[,]" 42 U.S.C. § 11603(a). Giguere asserts that he is entitled to relief under the Hague Convention because "the Parties temporarily relocated to Massachusetts in 2022," at which time "the habitual residence of the Parties and their two [children] was Quebec, Canada," and the children "were wrongfully retained by [Tardif] in Massachusetts without [Giguere's] consent" on or about August 28, 2024. Compl. ¶¶ 1.5–1.6 [Doc. No. 1].

Tardif challenges the court's subject matter jurisdiction first on the ground that "there has been no 'wrongful removal' or 'wrongful retention,' and therefore, neither the Hague Convention nor ICARA applies[.]" Mot. to Dismiss at 6 [Doc. No. 8]; see also Respondent's Aff. [Doc. No. 8-1]. These arguments (and evidence) as to the children's habitual residence go to the merits (or lack of merit) of Petitioner's claim, but do not undermine the court's subject matter jurisdiction to determine those merits. See Sánchez–Londoño v. Gonzalez, 752 F.3d 533, 539–40 (1st Cir. 2014) (setting forth elements of claim for return of children under Hague Convention).

Tardif also challenges the court's subject matter jurisdiction based on a divorce action she commenced in Massachusetts state court prior to the filing of the instant action; she characterizes the Complaint here as a collateral attack on the state court's jurisdiction. Mot. to Dismiss at 12–15 [Doc. No. 8]. She argues further that a Quebec court would not have jurisdiction over child custody determinations in Massachusetts. Id. at 15–17.

The divorce proceedings have no bearing on this court's subject matter jurisdiction. The parties' domestic disputes are not before this court. And neither a state proceeding concerning child custody in Massachusetts nor the asserted lack of jurisdiction of a Quebec court is a bar to

2

this court's jurisdiction. Indeed, "a decision relating to custody [that] has been given in or is entitled to recognition in the requested State shall not be a ground for refusing to return a child under [the Hague] Convention." Hague Convention, art. 17.

Tardif has identified no authority requiring that a petition under the Hague Convention be filed in state court if a divorce action is pending there. Nor has she suggested that a duplicative petition under the Hague Convention has been filed.

Tardif's argument about the jurisdiction of Quebec courts is similarly unpersuasive. She argues that a divorce proceeding cannot lie in Canada because it must be initiated in a province where "either spouse has been habitually resident . . . for at least one year immediately preceding the commencement of the proceeding." Mot. to Dismiss at 15 (quoting Canada Divorce Act § 3(1)) [Doc. No. 8]. But that the parties may not be able to initiate divorce proceedings (or ancillary child custody proceedings) in Canada does not undermine this court's subject matter jurisdiction under the Hague Convention.

Tardif adds that the family is no longer subject to the Quebec Civil Code because it provides, for example, that "[c]hange of domicile is effected by a person establishing his residence in another place with the intention of making it his principal establishment. The proof of such intention results from the declarations of the person and from the circumstances of the case." Id. at 16 (quoting Quebec Civil Code § 76). Again, however, whether the family is subject to the Quebec Civil Code is not material to whether this court has subject matter jurisdiction over the dispute.

Accordingly, the court finds that it has subject matter jurisdiction over this matter arising under the Hague Convention. Tardif's motion to dismiss for lack of subject matter jurisdiction is DENIED.

3

## II. Motion to Dismiss for Failure to State a Claim

### A. Standard of Review

In evaluating a motion to dismiss for failure to state a claim, the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"Exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6)." Trans-Spec Truck Service, Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (internal citations and quotations omitted). In ruling on a motion to dismiss, "a judge can mull over 'documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice.'" Lydon v. Local 103, Int'l Bhd. of Elec. Workers, 770 F.3d 48, 53 (1st Cir. 2014) (quoting Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008)) (alteration in original). If other materials outside the pleadings are presented, the court may exclude such materials or may treat the motion as one for summary judgment, with all parties given a reasonable opportunity to present all the material that is pertinent to the motion. Fed. R. Civ. P. 12(d).

The court may not consider the Respondent's Affidavit [Doc. No. 8-1] on a motion to dismiss for failure to state a claim.

4

B.     Facts as Alleged in the Complaint

Giguere alleges as follows:

Giguere and Tardif are the parents of two minor children who were born in Canada in April 2020 and April 2022, respectively, are Canadian citizens, and have Canadian passports. Compl. ¶¶ 4.2–4.4 [Doc. No. 1]. Giguere and Tardif were also born in Canada and married in October 2021. Id. ¶¶ 3.1, 3.2. The family lived together in Quebec, Canada, until December 27, 2022. Id. ¶¶ 3.1, 3.2, 4.1.

Around July 2021, Tardif informed Giguere of her parents' intention to launch a transport business in the United States. Id. ¶ 4.7. Giguere and Tardif decided to take part in launching the business. Id. In 2022, they applied for non-immigrant E-2 visas, which cover a maximum stay of five years and require visa holders to renew their I-94 admission numbers by leaving the United States at least every two years. Id. "The parties agreed that they and the [children] would return to Quebec, Canada[,] at the latest at the end of five (5) years. However, it was also agreed upon by the parties that the [children] would return to Quebec, Canada[,] sooner should one of the parties make such a request, for any reason whatsoever." Id. ¶ 4.8.

On December 27, 2022, Giguere, Tardif, and the children entered the United States on their E-2 visas. Id. ¶ 4.10. While in the United States, Giguere and Tardif have continued to hold Quebec-issued driver's licenses; the family maintains Quebec medical insurance cards and has traveled to Quebec for every long weekend and holiday during their time in Massachusetts. Id. ¶ 4.11. For their first nine months in the United States, the family lived in a Haverhill, Massachusetts apartment leased by Tardif's parents' company. Id.

Beginning in March 2023, Giguere voiced his wish that the family return to Canada. Id. ¶ 4.12. Giguere nonetheless agreed that he and the children would remain with Tardif in Massachusetts "until November, 2024[.]" Id. The couple sold their property in Canada and, in

September 2023, purchased and moved into a home in Salisbury, Massachusetts. Id. ¶¶ 4.11, 4.12 n.4. The sale and purchase of the homes was for financial reasons. Id.

Giguere communicated to Tardif multiple times, including on August 17, 19, and 27, 2024, that he wanted the children to return with him to Quebec. Id. ¶¶ 4.13, 4.14. On August 26, 2024, Giguere "moved back to Quebec, Canada . . . and expected [Tardif] and the [children] to join him in Quebec for Labor Day weekend." Id. ¶ 4.14. On August 28, 2024, Tardif informed Giguere "that she wanted to remain in the United States and that neither she nor the [children] would be returning to Quebec at that time." Id. Giguere contends that since then, Tardif has wrongfully retained their children in the United States, id. ¶ 5.1, and has "actively attempted to restrict [Giguere's] time with the [children] and limit the [children's] travel back to . . . Quebec, Canada[,]" id. ¶ 4.14.

In September 2024, Tardif initiated divorce proceedings in Massachusetts state court. Id. ¶ 4.15. Tardif only permitted Giguere to spend time with the children by entering into stipulations in September and November 2024 allowing Giguere "regular parenting time . . . every other weekend, one weekend in Canada and one in Massachusetts each month." Id. ¶¶ 4.15, 4.17. Giguere filed an answer and counterclaim in those proceedings seeking removal of the children to Quebec, Canada. Id. ¶ 4.16.

On November 2, 2024, without Giguere's consent, Tardif renewed the I-94 admission numbers for herself and the children. Id. ¶ 4.19.

On January 21, 2025, Giguere filed an Application under the Hague Convention to the Central Authority in Quebec, Canada, which was transmitted to the Central Authority in the United States on February 14, 2025. Id. ¶ 4.21; see generally Compl., Ex. 5 [Doc. Nos. 1-7, 1-8, 1-9, 1-10, 1-11, 1-12]. This Complaint followed.

### C. Discussion

"Removal [of a child] under the Hague Convention is only appropriate if the child is being retained in a country other than his or her place of habitual residence. . . . The question of habitual residence is a highly fact-specific inquiry that turns on the particular circumstances of each unique case. In discerning the parties' intentions, this court will look 'specifically to the last moment of the parents' shared intent.'" Mendez v. May, 778 F.3d 337, 344 (1st Cir. 2015) (citations omitted).

Giguere's position is that he and Tardif agreed upon a temporary relocation from Canada to Massachusetts and that Tardif's remaining with the children beyond the agreed-upon duration constitutes "wrongful retention" of the children in violation of the Hague Convention. See Compl. ¶¶ 5.1, 5.2 [Doc. No. 1]. Tardif argues the Complaint fails to state a claim because Giguere's actions are inconsistent with the conclusion that the children's place of habitual residence was Canada at the time of her alleged "wrongful retention," and so there could not have been a wrongful retention under the Hague Convention.

On a motion to dismiss for failure to state a claim, the court must take as true the facts alleged in the Complaint and must draw all reasonable inferences in Giguere's favor. See Nisselson, 469 F.3d at 150. Applying this standard, the court finds plausible Giguere's allegations that the family moved to Massachusetts for business purposes, and that both the parties' shared intent and the nature of their non-immigrant visas made this move temporary. Compl. ¶¶ 4.7, 4.8, 4.10 [Doc. No. 1]. Giguere plausibly alleges that, for financial reasons, they sold their home in Quebec and purchased one in Massachusetts rather than renting after the first nine months. Id. ¶¶ 4.11, 4.12 n.4. He plausibly alleges that, despite selling the house in Canada, the family maintains driver's licenses and medical insurance in Canada. Id. ¶ 4.11.

Tardif challenges these inferences. She characterizes the family's relocation to the United States not as "temporary" but "for an indefinite period of time." Mot. to Dismiss at 8 [Doc. No. 8]. She asserts that "the parties lived their life in Massachusetts for nearly two years before [Giguere] had a change of heart and returned, on his own, to Canada" and he "could not have had a realistic expectation that the rest of his family would abandon their home, life, and livelihood with no planning or preparation at a moment's notice as he demanded." Id. at 9. She asserts that because the sale of the Canada home and purchase of the Salisbury home occurred several months after Giguere began expressing his desire to return to Canada in March 2023, these transactions are inconsistent with his position that the relocation was temporary. Id.

But while Tardif's interpretations of the alleged facts are quite plausible, see Opp. to Mot. to Dismiss at 4 (Giguere "acknowledg[ing] there are factors which point in both directions") [Doc. No. 11], they raise questions of fact inappropriate for resolution on a motion to dismiss.

The court finds that Giguere has plausibly stated a claim for the return of his children from Massachusetts to Canada under the Hague Convention on the ground that they were habitual residents of Canada who have resided in Massachusetts only temporarily. These allegations may well be undermined once evidence is considered. He is, however, entitled to an opportunity to prove the merits of his claim with competent evidence, which Tardif may rebut with competent evidence at summary judgment or at trial. Tardif's motion to dismiss for failure to state a claim is DENIED.

### III.  Motion to Restrain

Giguere's Motion to Restrain Respondent from Registering the Parties' Child for School in Massachusetts [Doc. No. 7] seeks an order prohibiting Tardif from registering their older child for kindergarten in Salisbury, Massachusetts, for the upcoming school year "pending the

outcome of this action." Id. ¶ 1.1. The motion makes no attempt to address the elements that must be established for a temporary restraining order or preliminary injunction under Federal Rule of Civil Procedure 65. Giguere only contends as follows: "By definition, enrolling a child in school bolsters the argument that a child's habitual residence has shifted from one jurisdiction to another. [Tardif] ought not to be able to enhance her position by enrolling the child in public school in Massachusetts during the pendency of this action." Id. ¶ 2.4.

That enrolling the child may or may not bolster the parties' arguments on the merits is not a reason for a restraining order. Whether the children are ultimately ordered returned to Canada (if Giguere prevails in this action) or not (if Tardif prevails), Giguere has identified no harm that would result from enrollment at this time. Giguere's motion is DENIED.

### IV.   Conclusion

For the foregoing reasons, Giguere's Motion to Restrain Respondent from Registering the Parties' Child for School in Massachusetts [Doc. No. 7] and Tardif's Motion to Dismiss the Verified Complaint [Doc. No. 8] are DENIED.

IT IS SO ORDERED.

May 5, 2025                                         /s/ Indira Talwani
                                                    United States District Judge