UNITED STATES DISTRICT COURT
For the DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:25-CV-10468-IT

TOMMY GIGUERE,
    PETITIONER

v.

STACY TARDIF,
    RESPONDENT

## PETITIONER'S TRIAL MEMORANDUM

This case is before the Court for trial on the Verified Complaint filed by Petitioner, Tommy Giguere ("Father"), on February 25, 2025. He seeks the return of his minor Children, MG1 and MG2, now ages 3 and 5, to Canada under the Hague Convention on the Civil Aspects of International Child Abduction and applicable federal law. The action is brought against Respondent, Stacy Tardif ("Mother"). Father respectfully asks the Court to grant the relief requested in his Verified Complaint and order the Children returned to Quebec Canada for determination of custody in accordance with the laws of that jurisdiction.

The issues for the Court to decide at trial include the following:

    a.    Was the Children's habitual residence Quebec or Massachusetts in August, 2024 when Father alleges the Children were wrongfully retained in Massachusetts by Mother; and

b.      If the Court finds the Children were habitual residents of Quebec at the time of the wrongful retention in Massachusetts, the Court must then decide whether Father's participation in the temporary orders stage of the divorce action initiated by Mother constitutes acquiescence to the Children remaining permanently in Massachusetts.

## I.     Background:

The parties were married in St. Benoit-Labre, Quebec, Canada, on October 16, 2021. Both parties were born and raised in Canada[1] until December 27, 2022, when they relocated on a trial basis to Massachusetts.  In or around July 2021, Mother informed Father of her parents' desire to expand their transport business in Massachusetts. The parties decided to participate in the project and subsequently applied for E-2 <u>non-immigrant</u> visas in 2022. The maximum duration of this visa is five (5) years, with a requirement to renew the I-94 admission numbers every two (2) years. This condition required the family's temporary departure from the U.S. back to Canada at the end of each two-year period to renew their I-94 numbers should they wish to extend their stay in the United States for the full five years allowed by their visa.

Prior to the move, Father told family and friends they were moving to Massachusetts temporarily as a test or on a trial basis to help with Mother's family

---

[1] Mother lived in Florida for approximately 10 months as a teenager, but there was an immigration issue and her family was forced to return to Quebec.

business. The Parties agreed to return to Quebec before the expiration of their five-year Visa or earlier if either party requested it due to dissatisfaction with life in the United States. Father certainly never intended for himself or the Children to permanently move to Massachusetts or become US Citizens. Mother now claims that, contrary to her prior actions, it was always her intention to permanently relocate and become a US Citizen.

On December 27, 2022, the family temporarily relocated to Massachusetts. The family initially lived in a three-bedroom apartment leased by Mother's parents' company where they remained for nine (9) months. Mother's parents, brother and uncle had free and constant access to the home. Her parents visited often, while her brother and uncle did so less frequently. This ultimately strained the party's relationship, as it compromised much of their privacy and, from Father's perspective, it never felt like his home.

As early as March 2023, Father expressed dissatisfaction with life in Massachusetts and with the work he was doing for Mother's parents' company (which was more mechanics than truck driving). Father was regularly sent to New Hampshire and back to Quebec to perform mechanic services much to his displeasure.

Father missed his family in Quebec, his friends in Quebec and the life the parties had made for themselves as a family in Quebec. He recalled that their move had always been understood as temporary, with the agreement that either party could

trigger a return to Quebec if unsatisfied with the move.  Following numerous discussions about Father's unhappiness, the parties agreed to remain in Massachusetts until the expiration of their I-94 numbers in November 2024. As part of this agreement, and at Father's insistence to live independently of Mother's parents' oversight, the parties began looking for alternative living arrangements in the spring of 2023.

Father investigated the rental market and soon discovered the parties could not afford the rental prices on their salaries, especially where they continued to pay the mortgage and expenses related to their Quebec home.  In seeking alternative housing, Father observed that the Massachusetts housing market was strong and believed that purchasing a home could be a profitable investment, even if they sold it within a year or so.  Accordingly, the Parties sold their Quebec home on May 12, 2023, and purchased a three-story town home in Salisbury, Massachusetts, in September 2023. Ironically, part of the reason for the move was to have more privacy and space from Mother's parents. Yet, just weeks later, Mother's parents purchased a unit a few doors down in the same townhouse complex and continued to impede on the Parties' privacy by freely coming and going from the parties' home when they were in town.

During their time in Massachusetts, the Children returned to Quebec on no fewer than thirty-four (34) occasions between December 2022 and August 2024. The family took every opportunity to return to Canada for holidays, family celebrations, other significant events, and just for weekend visits, underscoring their strong

ongoing ties to Quebec.  All of Father's family and friends still live in Quebec, Canada.  All of Mother's family and most of her friends still live in Quebec.  All of the Children's family (aside from Mother) live in Quebec.

In addition to signing legal documents attesting to the fact that the family was <u>temporarily residing</u> in Massachusetts, the parties' actions consistently demonstrated their intention not to establish permanent residence in the United States. For example, until very recently, both parties maintained Quebec-issued driver's licenses and medical insurance cards.  Both parties remain registered to vote in Quebec.  Father owns a motorcycle which he never imported or registered in Massachusetts.  Although he temporarily imported and registered his SUV in Massachusetts, it was only after questioning at border crossings and warnings from the daycare provider. He exported the SUV back to Quebec and re-registered it there albeit, not without difficulty because Mother had filed for divorce and concerns were raised regarding the Rule 411 Automatic Restraining Order.

It was only about six weeks ago when Mother obtained a Massachusetts driver's license on May 30, 2025.  Further, Mother acknowledges calling the Quebec division of health and reporting the family's permanent relocation to Massachusetts in May of 2025 after Father raised the existence of the health insurance in this action. Mother's call triggered a cancellation letter addressed to Mother but when Father logs into the insurance portal his account shows active insurance for himself and the Children.

While residing in Massachusetts, the parties did not meaningfully integrate into the community. They rarely socialized or went out. They had few friends and returned to Quebec typically twice a month where they spent time with their family and friends. The Children attended a daycare with only four other children, so they did not have a wide social network into which they integrated. Further, when the parties moved here, Father spoke very little English and the Children spoke none which further impeded their integration. Neither child is school age yet, although Mother has registered their elder daughter for kindergarten in the fall despite Father's objection.

By March 2024, Father again expressed his desire for the family to return to Quebec before the end of 2024. Mother responded by suggesting that Father make a plan for returning because she was unwilling to return without one. Between March and August 2024, Mother attempted to persuade Father to remain in Massachusetts. Father, on the other hand, was working on the plan to return to Canada as Mother suggested. He had discussions with his father about starting his own business and arranged for childcare for the Children upon their return. Mother became frustrated with Father's attempts to discuss his unhappiness and requested that he write her a letter detailing his feelings. He wrote and gave this letter to Mother in August, 2024. Father reiterated his intentions to Mother on August 17, 19, and 27, 2024, explicitly stating that he wanted the family to return to Quebec and rejecting Mother's proposal

that he return to Quebec to work during the week and commute to Massachusetts on weekends.

On August 27, 2024, Father permanently returned to Quebec, where he continues to reside today. He anticipated that Mother and Children would join him for the Labor Day weekend as previously planned and to further discuss their situation. However, on August 28, 2024, while Father was in Canada, Mother informed him that she had decided to remain in the United States and that neither she nor the Children would be returning to Quebec.

Then, on September 4, 2024, Mother filed a Complaint for Divorce in Massachusetts. Mother remains in Massachusetts where she resides with her boyfriend and the parties' two young Children. After Labor Day Weekend, Mother refused to permit the Children to spend any time with Father in Quebec unless there was a written stipulation in her divorce action. Effectively, this meant if Father was to have any meaningful time with the Children in their home country, he would be forced to engage in the divorce action brought by Mother. Father believed that cooperating with these terms was the only way to remain involved in his Children's lives, lives in which he had been actively involved in since their birth. There is no question, Massachusetts has jurisdiction to divorce the parties so Father could not have the case dismissed for lack of jurisdiction. On advice of divorce counsel, Father filed a counterclaim seeking to remove the Children permanently from Massachusetts to Quebec.

It was not until a few months later that Father was able to identify and hire counsel versed in the Hague Convention on Civil Aspects of International Child Abduction. Father promptly moved forward with a Petition to the Central Authority of Quebec for the return of MG1 and MG2 and, once transmitted to the US Central Authority, filed the within action. Once this action was filed, Father was able to obtain a stay of all child-related matters in the divorce action. Although temporary orders are in place dictating the terms of temporary custody Father's parenting time (limited to every other weekend with one weekend in Quebec and the other in a hotel room in Massachusetts), no final determinations regarding custody have been made.

## II.     Summary of Applicable Provisions of Hague Convention:

"A removal or retention of a child is to be considered wrongful where (a) it is in breach of rights of custody attributed to a person, … under the law of the State in which the child was habitually resident immediately before the removal or retention; and (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the wrongful removal or retention." Hague Convention on Civil Aspects of International Child Abduction Article 3. There is no dispute that Father has rights of custody which he was exercising at the time he alleges the Children were wrongfully retained by Mother in Massachusetts.

"Where a child has been wrongfully removed or retained in terms of Article 3 and, at the date of the commencement of the proceedings before the judicial or

administrative authority of the Contracting State where the child is, a period of less than one year has elapsed from the date of the wrongful removal or retention, the authority concerned shall order the return of the child forthwith." <u>Hague Convention on Civil Aspects of International Child Abduction Article 12</u>. Father alleges the Children were wrongfully retained by Mother on August 28, 2024. He filed this petition on February 26, 2025, well within the one-year timeframe contemplated in the Convention.

"The sole fact that a decision relating to custody has been given in or is entitled to recognition in the requested State (i.e. Massachusetts) shall not be a ground for refusing to return a child under this Convention, but the judicial or administrative authorities of the requested State may take account of the reasons for that decision in applying this Convention." <u>Hague Convention on Civil Aspects of International Child Abduction Article 17</u>. Mother's defense is that Father waived his right to seek relief under the Hague Convention when he participated in her divorce action and filed a counterclaim to remove the Children back to Quebec rather than moving to dismiss that case for lack of subject matter jurisdiction. However, the divorce case remains open and in the discovery phase and the custody components have been stayed pending the outcome of this case. Father was under no obligation to pursue a course of action preferred by Mother and is fully entitled to seek relief under the Hague Convention in this Court prior to any final custody determination by the family court. **Argument**.

"A child's habitual residence depends on the totality of the circumstances specific to the case, not on categorical requirements such as an actual agreement between the parents." Monasky v. Taglieri, 140 S. Ct. 719 (2020). "[T]he first step toward acquiring a new habitual residence is forming a settled intention to abandon the one left behind. Otherwise, one is not habitually residing; one is away for a temporary absence of long or short duration." Mozes v. Mozes, 239 F.3d 1067, 1075 (2001) (internal citations omitted). Because Children are typically too young to decide where they will reside, the intention of the parents must be taken into account. Id. at 1076. The habitual residence inquiry is easier for older children. For younger children, such as MG1 and MG2, acclimatization "depends on their parents as caregivers" making "the intentions and circumstances of caregiving parents … relevant considerations." Monasky v. Taglieri, at 727. In his concurring opinion, Justice Thomas expanded on the facts to be considered:

> "Answering the question of what is customary or usual, for instance, requires judges to consider a host of facts, such as the presence or absence of bank accounts and driver's licenses, the length and type of employment, and the strength and duration of other community ties. Determining whether there is a residence involves the consideration of factors such as the presence or absence of a permanent home, the duration in the country at issue, and, in some cases, an actual agreement between the parents to reside in a particular place." Id. at 732-733

As described above, the parties temporarily relocated to Massachusetts on December 27, 2022 in order to assist in the expansion of Mother's parents' transport

business. The entire relocation was contingent upon their temporary E-2 **non-immigrant** Visa status which, as acknowledged by the Mozes court, "cast[s] considerable doubt on whether they would be allowed to remain here indefinitely even if they wished to." Mozes, at 1082.

Objectively, this case presents mixed facts with the parties taking both affirmative steps to keep their ties to Quebec while simultaneously taking steps to acclimate to life in Massachusetts. During their time in Massachusetts, the parties maintained bank accounts in Quebec (even after selling their house) and maintained Quebec driver's licenses. They also opened a bank account in Massachusetts where they deposited their earnings from their employment with the Massachusetts division of Mother's family business. However, when Father was sent to Quebec to work for the Quebec division of the business, he was paid by the Quebec division and deposited that pay into his Quebec bank account.

The parties maintained health insurance in both Quebec and Massachusetts for themselves and their Children. The Children have pediatricians in both Quebec and Massachusetts. Father has a motorcycle that remained registered in Quebec despite what would have been a cost savings to export and register it in Massachusetts. However, Father did export his SUV which he then registered in Massachusetts for a period of time. The parties filed income tax returns in both locations. In 2022 they filed as full time Quebec residents but in 2023 the bulk of their earnings were from Massachusetts, and they spent the bulk of their time here thus filed as primarily

residing in Massachusetts. In 2024 Father resumed filing as a resident of Quebec while Mother presumably filed as a resident of Massachusetts.

The family's entire extended family and the vast majority of their friends continue to reside in Quebec. As such, the family made repeated return trips to Canada, typically twice per month, and struggled to integrate socially in Massachusetts. The Children are not yet school age, so their socialization is dependent on their parents. The daycare center they primarily attended in Massachusetts is so small there are only four other Children in the center. Taken as a whole, all of these facts support the conclusion that the parties never intended to settle permanently in Massachusetts and never formed the intent to abandon their habitual residence in Quebec. In other words, this is one of the cases contemplated by the <u>Mozes</u> court where "even though the exact length of the stay was left open to negotiation, the court is able to find no settled mutual intent from which such abandonment can be inferred." <u>Mozes</u>, at 1077-1078. Further, "in the absence of settled parental intent, courts should be slow to infer from [the children's] contacts that an earlier habitual residence has been abandoned." <u>Id</u>. at 1079.

Mother denies that Quebec remains the Children's habitual residence but goes on to assert that Father acquiesced to the Children remaining in Massachusetts when he participated in the divorce action filed by Mother on September 4, 2024. Father acknowledges, if he had allowed the temporary orders in the divorce action to become permanent as part of a final judgment of divorce, such would have signaled his

acquiescence. See Nicolson v. Pappalardo, 605 F. 3d 100 (2010). But that is just not what happened.

In the fall of 2024, Father was stuck between the proverbial rock and hard place. Mother had filed for divorce and claimed Massachusetts had the right to decide custody because the Children had been here for more than six months which, according to the Massachusetts Uniform Child Custody Jurisdiction Act[2], entitles Massachusetts to make custody determinations. Father made every effort to explore every avenue available for the Children to be returned to their Habitual Residence in Quebec, while also attempting to negotiate directly with Mother for access to spend time with the Children, whom he missed dearly. Mother changed the locks on the family home in Salisbury right after Father's return to Quebec so there was nothing Father could do to access the Children without Mother's cooperation. Mother also had possession of the Children's passports.

On October 22, 2024, Father, on advice of divorce counsel, filed a counterclaim to Mother's divorce seeking custody of the Children and permission permanently remove them back to Quebec. By definition, a claim for the Children's permanent removal cannot be construed to signify Father's acquiescence that they remain in Massachusetts. Father sought temporary orders to maintain regular contact

---

[2] Massachusetts remains the only state in the country which has not adopted the Uniform Custody Jurisdiction and Enforcement Act so our laws are somewhat different from all other states on this point.

with the Children while the divorce was proceeding and, when he learned there was no available date for hearing on his motion until early 2025, he even filed a motion for speedy trial and short order of notice which was denied by the Court on October 24, 2024.

Father was left with two options – forego seeing his Children for several months while waiting for a hearing date followed by issuance of temporary orders, or else negotiate with Mother and reach a stipulation for Temporary Orders pending a final resolution of the case. Father did not want to be separated from the Children for any more time so he chose to negotiate a temporary resolution. Father did NOT give up his plea to permanently remove the Children back to Quebec in the stipulation for temporary orders, he merely conceded to the Children remaining **temporarily** in Massachusetts. He did so in exchange for the right to spend one weekend each month with the Children in their home country of Canada. Father is required to spend any other parenting time with the Children in a hotel in Massachusetts for the time being.

Father did not give up his pursuit for a path for the Children's return to Quebec and actively pursued alternative avenues even after executing the stipulation for temporary orders. His efforts eventually lead to his discovery of the Hague Convention on Civil Aspects of International Child Abduction and to counsel versed in this process.

"[T]he defense of acquiescence pertains only to what happens post-retention." <u>Darin v. Olivero-Huffman</u>, 746 F.3d 1,16 (2014). "The exceptions are 'narrow' and must be narrowly construed." 42 U.S.C. § 11601(a)(4). In this case, Father expressed his objection to the Children remaining in Massachusetts in his answer and counterclaim wherein he sought permanent removal of the Children back to Quebec. And, once his Petition in this Court was filed, he sought a stay of the custody component of the Divorce action in the Probate and Family Court which has been stayed pending the outcome of this matter. Father's signing of the stipulation for temporary orders provided only for temporary custody and ought not to be read as if it was a permanent acquiescence to the Children remaining in Massachusetts or a waiver of Hague Convention rights. <u>Nicholson</u> at 106-107. Much like <u>Nicholson</u>, this is a case of temporary custody. "Permanent custody is a different almost certainly of greater importance to the parents and not one that would necessarily be addressed in any way in a consent order providing for temporary protection and custody." Id at 108.

Accordingly, like in <u>Nicholson</u>, "we do not have a 'clear and unequivocal' expression of an agreement by [Father] to have final custody determined in a Massachusetts court, nor a 'convincing written renunciation of rights' to this effect." <u>Id</u>. at 108-109.

Wherefore, the relief in Father's petition should be granted.

Dated: July 11, 2025

Respectfully submitted.
Tommy Giguere,
By his Attorney,

*/s/Wendy O. Hickey*
Wendy O. Hickey, Esq., BBO#657457
Stephanie L. Curtin (BBO#693877)
Brick, Jones, McBrien & Hickey LLP
250 First Avenue, Suite 201
Needham, MA 02494
617-494-1227
whickey@brickjones.com
scurtin@brickjones.com

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 11th day of July, 2025, I served a copy of the foregoing upon the Defendant pursuant to Standing Order 4-20 via electronic mail upon his attorney of record: Brian Waller, Esq. (brian@turcolegal.com) Turco Legal, P.C., 250 Commercial St Suite 200, Worcester, MA 01608.

*/s/Wendy O. Hickey*