UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tommy Giguere,
    PETITIONER

    v.                                                                 Civil Action No. 1:25-CV-10468-IT

Stacy Tardif,
    RESPONDENT

## RESPONDENT'S TRIAL BRIEF

NOW COMES the Respondent, Stacy Tardif (hereafter "Mother"), by and through her attorney, Brian Waller, Esq. of Turco Legal, P.C., and submits the following governing authorities and factual basis as and for her trial position in the present action:

## BACKGROUND

1. The Petitioner, Tommy Giguere (here "Father"), is a Canadian citizen born in Quebec, Canada. He is a "petitioner" within the meaning of 42 U.S.C. §11602(4).

2. The Respondent / Mother is a Canadian citizen born in Quebec, Canada residing in Salisbury, Massachusetts. She is a "respondent" within the meaning of 42 U.S.C. §11602(6).

3. Mother is a legal resident of the United States pursuant to a valid E-2 visa.

4. The parties were married in Quebec, Canada on October 16, 2021.

5. The parties share two minor children, M.G.1 (age 5) and M.G.2 (age 3). Both children have birthdays in April.

6. The parties and children relocated from Quebec to Massachusetts on December 27, 2022 to establish and grow Dercy, Inc., a transportation business owned by Mother's parents in Salisbury, Massachusetts.

7. Upon relocating to MA, both parties were employed by Dercy, Inc.

8. Upon relocating to Massachusetts, the parties resided in a rented apartment in Haverhill, MA paid for by Mother's parents.

9. The parties sold their home in Vallèe-Jonction, Quebec, Canada on May 12, 2023.

10. The parties loaded the contents from their home in Canada into a shipping container and moved the container to the business location in Salisbury, MA while they looked for a home to purchase.

11. The parties purchased a condominium at 207 Beach Road, Unit D-1, Salisbury MA on September 8, 2023.

12. M.G.1 attended daycare at Shelly's Family Daycare in Haverhill, MA beginning on January 3, 2023.

13. M.G.2 attended daycare at Shelly's Family Daycare in Haverhill, MA beginning on January 3, 2023.

14. The parties enrolled M.G.1 at Milestones Childcare and Preschool for the 2024-25 school year on August 4, 2024, with the consent and signature of both parties, where she began attending on September 3, 2024.

15. The parties and children obtained medical insurance in Massachusetts in January 2023.

16. Father imported and registered his Ford Explorer in Massachusetts in May 2024.

17. The parties filed non-resident tax returns in Canada for calendar year 2023.

18. The parties filed federal and state tax returns as residents of Massachusetts for calendar year 2023.

19. Father resided in Massachusetts from December 27, 2022 until he left to return to Canada on or about August 27, 2024.

20. Mother continues to reside in the parties' home in Salisbury, Massachusetts with the parties' children.

21. Mother filed for divorce in Massachusetts on September 4, 2024 in Essex County Probate and Family Court under Docket No. ES24D1750DR

22. Father voluntarily accepted service of the Summons on Mother's Complaint for Divorce on October 11, 2024.

23. Father filed an Answer and Counterclaim to Mother's Complaint for Divorce on October 22, 2024. In his counterclaim, Father asked the Court to grant him custody of M.G.1 and M.G.2, and to allow him to remove the children to Quebec, Canada.

24. Prior to accepting service of the summons or filing his Answer and Counterclaim, Father voluntarily entered into a stipulation whereby he had parenting time with the children in Canada from September 20, 2024 through September 22, 2024.

25. Both parties are represented by counsel in the Massachusetts divorce action.

26. The parties entered into an Agreement for Temporary Orders in the pending divorce action on November 21, 2024 whereby:

   a. The parties have shared legal custody of the minor children;
   b. Mother has primary physical custody of the minor children;
   c. Father has parenting time with the children every-other weekend, with one weekend per month to be spent in Canada;
   d. Mother has exclusive use and occupancy of the former marital home located at 207 Beach Road, unit D-1, Salisbury, Massachusetts; and
   e. The parties submitted the issues of payment of the expenses for the former marital home and child support to the presiding judge for determination.

27. The Probate and Family Court issued a Temporary Order on December 2, 2024 (Black, J.) that, as most relevant here:

   a. Mother is responsible for the expenses associated with the marital home;
   b. Father is to pay child support to Mother in the amount of $257.00 per week, and approximately one-third of the childcare expenses for

   the minor children of $255.00 per week, for a total payment by Father to Mother of $512.00 per week.

  c. Father is to pay retroactive child support to Mother for the 12 weeks from the date he returned to Canada to the date of the order totaling $6,144.00 that weekend, and Mother drove to meet him midway between Salisbury. MA and Quebec to exchange the children.

28. Both parties continue to operate under the provisions of the agreements and orders in the Massachusetts divorce action.

29. On January 21, 2025, Father filed an Application to the Central Authority in Quebec, Canada seeking return of the Children under Article 8 of the Convention on the Civil Aspects of International Child Abduction (hereafter "Convention").

30. On February 26, 2025, Father filed his Verified Complaint for Return of the Minor Children to Canada.

31. The United States and Canada are both signatories to the Convention.

## LEGAL FRAMEWORK

  The Convention, as implemented by ICARA[1], establishes legal rights and procedures for the return of children who have been wrongfully removed or retained during a child custody dispute. *Abbott* v. *Abbott*, 560 U.S. 1, 130 S. Ct. 1983 (2010). When issues of this nature arise in the United States district courts have concurrent original jurisdiction over such actions. *22 U.S.C.A. § 9003(a)*. Venue is proper under 28 *U.S.C.A § 1391(b)* in the federal district where a substantial part of the events giving rise to an ICARA claim occurred. *28 U.S.C.A § 1391(b)*. If jurisdiction and venue are established, courts are vested with the authority to decide choice of forum for resolving the underlying child custody dispute. *22 U.S.C.A. § 9001(b)(4)*; *22 U.S.C.A. § 9003*. ICARA prohibits courts from making a final determination as to the child's custody. *22 U.S.C.A. § 9001(b)(4)*.

---

[1] International Child Abduction Remedies Act (hereafter "ICARA"), 42 USC 11601 et seq.

The petitioner in an ICARA claim bears the burden of establishing a child was wrongfully removed or retained within the meaning of Article 3 of the Convention. *22 U.S.C.A. § 9003(e)*. Article 3 of the Convention states:

> The removal or retention of a child is to be considered wrongful where-
>
> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of **the State in which the child was habitually resident immediately before the removal or retention**; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Hague Convention, art. 3, T.I.A.S., No. 11670.* (emphasis added). If the court determines a child was wrongfully removed or retained from the child's habitual residence, the court must order the child to be returned to the habitual residence unless the respondent can establish an affirmative defense. *22 U.S.C.A. § 9003(e)(2)*.

"[E]very Hague Convention petition turns on the threshold determination of the child's habitual residence; all other Hague determinations flow from that decision." *Tsai-Yi Yang* v. *Fu-Chiang Tsui*, 499 F.3d 259, 271 (3d Cir. 2007).

## HABITUAL RESIDENCE

The Convention "provides that a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky* v. *Taglieri*, 589 U.S. 68, 68 (2020). "The Convention does not define 'habitual residence,' but, as the Convention's text and explanatory report indicate, **a child habitually resides where she is at home**. This fact-driven inquiry must be 'sensitive to the unique circumstances of the case and informed by common sense.'" *Id.* (citing *Redmond* v. *Redmond*, 724 F. 3d 729, 744 (7th Cir. 2013) (emphasis added)).

The court "must determine from all available evidence whether the parent petitioning for return of a child has already agreed to the child's taking up habitual residence where it is. *Darin* v. *Olivero-Huffman*, 746 F.3d 1, 8 (1st Cir. 2014) (citing

*Mozes* v. *Mozes*, 239 F.3d 1067, 1076 (9th Cir. 2001)." *Mendez* v. *May*, 778 F.3d 337, 344 (1st Cir. 2015).

There are no categorical requirements for establishing a child's habitual residence. *Monasky*, 589 U.S. at 80. "Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations. No single fact, however, is dispositive across all cases. Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." *Id*. at 78.

## ARGUMENT

### I.  The Habitual Residence of the Minor Children is the United States.

The facts of this case point to a singular conclusion: the children are habitually resident in the United States, and were habitually resident in the United States at the time of the alleged wrongful retention by Mother in August 2024. The parties, together, decided to relocate to the United States sometime after they were married, and they effectuated that plan on December 27, 2022.

The parties did everything that one would expect of a family moving to a new country. They arranged for employment, housing, and childcare; they obtained visas to allow them to live and work legally in the United States; they found medical care; they imported their vehicle and registered it in Massachusetts; they filed both Massachusetts and Federal taxes as residents; they filed taxes as non-residents in Canada; they sold their home in Canada and purchased a home in Massachusetts; they moved the contents of their home and their belongings to their new home in Massachusetts. It is difficult to conceive of a set of actions, viewed objectively, that could more conclusively demonstrate that the parties intended to call Massachusetts their home.

The Petitioner relies on an alleged agreement between the parties to return to Canada upon the request of either party at any moment, and numerous return trips to Canada to visit family as evidence that the family's stay in Massachusetts

was only temporary. The Petitioner claims that the marital home purchased in Massachusetts was "strictly as a financial investment" despite the fact that the family has lived there for nearly two years. (Pet. Compl. ¶ 4.11).

The Petitioner asks the Court to ignore every anchor that the family set in Massachusetts and accept his post hoc, subjective recasting of the family's intent and conversations between spouses to find that the family never changed their home from Canada to the United States. To accept Petiotioner's reasoning, reality must be completely abandoned.

Even if Father's allegation of an agreement to return to Canada is accepted as fact and Father made the request to return, the totality of the circumstances make it clear that the children's habitual residence is the United States. Their youngest daughter turned 3 in April 2025 and was 8 months old when she moved to the United States. The only home she knows is in Massachusetts.

## II.  The Petitioner consented to the relocation to Massachusetts.

"A child retained abroad over objection must be returned to his or her state of habitual residence unless the respondent can establish one of the provided-for defenses or exceptions. Hague Convention arts. 12, 13; *Friedrich* v. *Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)." *Nicolson* v. *Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010). As relevant here, the court is not bound to order return of a child if the petitioner consented to or subsequently acquiesced in the removal or retention. A respondent who opposes the return of a child has the burden of establishing by a preponderance of the evidence that the petitioner consented or subsequently acquiesced. *22 U.S.C.A. §§ 9003(e)(2), 9003(e)(2)(B).*

"[C]onsent […] focuses on [the petitioner's] intent prior to the child's retention." *Nicolson* v. *Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010) (referencing *Baxter* v. *Baxter*, 423 F.3d 363, 371 (3d Cir. 2005)). The alleged wrongful retention occurred in August 2024. The objective and undisputed facts detailing the myriad actions taken by the family in relocating to the United States need not be repeated, however, Father does not allege that any of those actions were taken against his will. In fact, Father was an active participant in relocating to the United States.

It would have been impossible for Mother to pick up and move the family to another country without the active cooperation and participation of Father. Father was employed in the United States for nearly two years, and he does not allege that he was forced, or did not otherwise willingly, do so.

Further, the Petitioner participated in the sale of the family's home in Canada and purchase of their home in Massachusetts. The real estate purchase in Massachusetts involved applying for a mortgage and signing extensive closing documents related to the sale. Based on these facts alone, it strains credulity to believe that Father did not consent to the family's relocation to the United States.

### III. The Petitioner subsequently acquiesced to the children remaining in the United States after the alleged wrongful retention.

"[A] defense to the Convention's requirement of return [is] to show that the party invoking a right to have the child returned "acquiesced" in retention; and it is hard to think of a more formal acquiescence than entering into a consent order providing that the other parent be awarded custody." *Nicolson* 605 F.3d at 106. "[A] clear and formal consent order by the non-U.S. parent agreeing to let a state court decide final custody would, both linguistically and for policy reasons, warrant treatment as acquiescence under the Hague Convention." *Id.* at 107.

It should be noted that in *Nicholson*, the court ultimately found that the custody order in question, which was part of an abuse prevention order, was ambiguous as to which country should determine custody rights for the child. That ambiguity was, in part, based on the wording of the order, the subjective intent of the petitioner at the time of the agreement, and the fact that the Petitioner had already filed an application to the Central Authority for return of the child at the time of the consent order.

Here, the Petitioner departed the family's home in Massachusetts to return to Canada in late August 2024. On September 4, 2024, Mother filed for divorce in Massachusetts. The parties entered into an agreement for Father to have parenting time with the children for a weekend in September 2024, however, with no terms as to custody of the minor children.

In October 2024, Father accepted service of the summons on Mother's Complaint for Divorce. It is notable that Father did not object to the jurisdiction of the Massachusetts court, or otherwise challenge that court's jurisdiction over the parties or as to the issues of custody, support, and division of the marital estate. Also in October 2024, Father filed an Answer and Counterclaim for Divorce in the pending divorce action. In his counterclaim, Father asked the court to grant him permission to return with the children to Canada, and asked the court to order the Mother to pay him a suitable amount of support for the benefit of the children.

On November 21, 2024, the parties entered into a further agreement for temporary orders. Notably, the parties agreed that:

      a. The parties would share legal custody of the minor children;

      b. Mother would have primary physical custody of the minor children;

      c. Father would have parenting time with the children, including one weekend per month in Canada; and

      d. Mother would have exclusive use and occupancy of the former marital home in Massachusetts.

The parties were unable to agree as to payment of the expenses for the former marital home or on an appropriate amount of financial support to be paid by Father to Mother for the benefit of the minor children. On those two issues, the parties made arguments to the court and requested that the Court decide and issue an order.

There was nothing ambiguous about the agreements entered into by the parties, and both parties have had the benefit of legal counsel at all relevant times in the divorce proceedings. Further, the Petitioner voluntarily submitted to the jurisdiction of the Massachusetts courts over custody of the minor children, and asked that court to decide the issue of financial support for the minor children. Father has never directly challenged the jurisdiction of the Massachusetts courts, nor has he sought appellate review of the judge's orders in the divorce action.

If Father had a subjective intent other than conceding that jurisdiction was appropriate in Massachusetts, an objective review of his actions allows no other conclusion. It was not until two months had passed *after* the Petitioner signed an

agreement for the Respondent to have primary physical custody of the minor children and for the children to continue to reside in the former marital home in Massachusetts that he filed his application to the Central Authority in Canada.

The custody agreement suffers from none of the ambiguity noted in *Nicholson*. To date, Father has raised no direct legal challenge to the validity of the Massachusetts custody agreement. Instead, Father seeks to challenge jurisdiction of the Massachusetts courts though a collateral attack in a different forum, apparently hoping for a fresh start or a do-over. There is no factual or legal basis to grant the relief sought, therefore, Father's Complaint for Return of the Minor Children must be denied.

## IV.  Attorney's Fees.

ICARA provides that "[a]ny court ordering the return of a child pursuant to an action brought under section 4 [*22 USCS § 9003*] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, […] and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." *22 USCS § 9007(b)(3)*. There is no specific provision that the petitioner be responsible for the costs incurred by the respondent in defense of an unsuccessful return of the child.

The Petitioner's efforts to return the children to Canada via a petition under the Convention and ICARA, in light of his clear consent to the family's relocation to the United States and his subsequent acquiescence to the children remaining in the United States, highlight the frivolity of this proceeding. While ICARA contains no mandate for an award of attorney's fees and costs to the successful respondent, it does not prohibit such an award.

*22 USCS § 9007(b)(2)* provides that "legal fees or court costs incurred in connection with an action brought under [ICARA] shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs." The petitioner's responsibility for payment of said fees and costs is subject to an order that shifts the responsibility for payment of those costs to the respondent, as noted above.

The Respondent has incurred significant legal costs in defense of Petitioner's baseless complaint. The Respondent believes that the statutory language "legal fees or court costs incurred in connection with an action" could, and should, be read to include the fees and costs incurred by the Respondent. *22 USCS § 9007(b)(2)*. The language of that section does not limit the fees or costs incurred to those incurred solely by the Petitioner. As such, Respondent's position is that her fees and costs "shall be borne by the petitioner."

Respondent's interpretation of this section does not defeat the purpose of the Convention for the swift determination of the proper jurisdiction for international custody disputes. It also does not place a barrier in the way of a legitimate petitioner who seeks return of a child wrongfully removed from their country of habitual residence. It would, however, serve as a deterrent to a spiteful petitioner seeking to drag a parent through costly legal proceedings without a good faith basis or expectation of success. Respondent respectfully requests that the Court award her reasonable attorney's fees and costs incurred in defense of this matter be reimbursed by the Petitioner.

Separately, this Court has the power to order Petitioner to pay Respondent's attorney's fees if it determines that Father "acted in bad faith, vexatiously wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc.*, 421 U.S. 240, 258-259 (1975) (providing exceptions to standard American Rule under which parties ordinarily bear their own costs). A party acts 'vexatiously' if his actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Local 265* v. *Nonotuck Resource Assocs., Inc.*, 64 F.3d 735, 737-738 (1st Cir. 1995).

If the Court is not inclined to award attorney's fees and costs to Respondent based on her interpretation of the provisions of ICARA, the Respondent respectfully requests leave to petition for an award of attorney's fees and costs and further brief this issue.

Dated: July 11, 2025            Respectfully submitted.

Stacy Tardif,
By her attorney,

_____
Brian Waller, BBO# 685672
Attorney for Respondent
Turco Legal, P.C.
250 Commercial Street, Suite 200
Worcester, MA 01608
Phone: (508) 986-9966
Email: brian@turcolegal.com

## CERTIFICATE OF SERVICE

**The undersigned hereby certifies** that a true copy of the within Respondent's Trial Brief was this day served upon Petitioner by electronic mail to Wendy Hickey and Stephanie Curtin, Attorneys for Petitioner, of Brick, Jones, McBrien & Hickey LLP, 250 First Ave., Suite 201, Needham, MA 02494 wendy@brickjones.com and stephanie@brickjones.com.

SIGNED under the penalties of perjury.

Dated: July 12, 2025            _____
                                                       Brian Waller