UNITED STATES DISTRICT COURT
For The DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:25-CV-10468-IT

TOMMY GIGUERE,
    Petitioner

v.

STACY TARDIF,
    Respondent

### STIPULATION OF THE PARTIES AS TO UNCONTESTED FACTS

NOW COME the Parties in the above-captioned matter, TOMMY GIGUERE ("Tommy") and STACY TARDIF ("Stacy") and hereby stipulate to the following facts in connection with the two-day trial of this action commencing July 16, 2025 before the Honorable Indira Talwani.

**A.   BACKGROUND-GENERAL FACTS**

1. Tommy (hereinafter "Father") is the father of MG1 and MG2.
2. Stacy (hereinafter "Mother") is the mother of MG1 and MG2.
3. Father, age 33, was born in Canada and lived in Quebec, Canada until December 27, 2022.
4. Father returned to Canada on August 27, 2024.
5. Father's current address is 201 President-Kennedy North, Vallee Jonction Quebec, Canada.
6. Mother, age 28, was born in Canada and lived in Quebec, Canada until December 27, 2022.
7. Mother and Father (collectively "Parties") were married on October 16, 2021, in Quebec, Canada.
8. Mother's current address is 207 Beach Road, Unit D-1, Salisbury, MA 01952.
9. The Parties have two children, MG1 and MG2, born in Saint-Georges, QC Canada on April XX 2020, and April XX 2022, respectively.
10. MG1 is now age 5, and MG2 is now age 3 (collectively "Children").

11. The Children are both citizens of Canada and hold Canadian passports.
12. Both Parties cared for MG1 and MG2 and exercised their custodial rights.
13. Until August 2021, Father worked with his father at an excavation company called Graviere Giguere, located in Vallee-Jonction, Quebec, Canada.
14. Between August of 2021 and December of 2022, Father worked for the Mother's parents' company, Transport Dercy Inc., in Beauceville, Quebec, Canada.
15. Prior to December of 2022, Mother worked for several different employers, including with her parents at a company called Transport Dercy Inc. located in Beauceville, Quebec, Canada.
16. The Parties and the Children ("the family") were living in their Canadian home they owned located at 521 rue du Boisé in Vallée-Jonction, Quebec, Canada prior to December of 2022 ("Canadian home").

B.    **DECEMBER 2022 DEPARTURE FROM CANADA**

17. The Mother's parents own a transportation business in Canada, Transport Dercy Inc.
18. The Parties discussed helping Mother's parents launch another transportation business in the United States.
19. In 2022, the family applied for a non-immigrant E-2 visa in preparation for entering the United States.
20. On November 11, 2022, the family entered the United States and obtained their I-94 numbers.
21. The E-2 visa can be valid for up to five (5) years and may be extended further, with mandatory renewal of the I-94 admission numbers every two (2) years.
22. The Parties and the children were granted E-2 visas for five years and were issued I-94 numbers in connection with their E-2 non-immigrant visas.
23. The family's I-94 numbers were set to expire on November 10, 2024.
24. Mother renewed the Children's I-94 numbers on November 2, 2024, and Father did not participate in the renewal.
25. The Mother has not applied for any change in her or the Children's immigration status within the United States.

C. **THE FAMILY'S PRESENCE IN THE UNITED STATES**

26. On December 27, 2022, the family moved to Massachusetts.
27. The family initially lived in Haverhill, Massachusetts in an apartment leased by and paid for by Mother's parents' business.
28. Mother's parents' company covered the cost of the apartment for a period of up to one year as part of the Parties' relocation.
29. Mother's parents had a room in the apartment where the family lived.
30. The Mother's parents had keys to the rented apartment occupied by the Parties and their children.
31. The Parties could not afford to maintain both the Canadian home and pay apartment rental costs in the United States.
32. Father maintains his driver's license and motorcycle registration in Canada.
33. Mother maintained her Canadian driver's license until May 30, 2025 at which point she obtained a Massachusetts driver's license.
34. The Parties are registered to vote in Canada.

D. **THE PARTIES' CANADIAN HOME**

35. The Parties sold the Canadian home on May 12, 2023.
36. After the sale of the Canadian home, the family's furniture and personal belongings were packed into a shipping container.
37. The shipping container then went to the United States and was stored at Mother's parents' business yard in Salisbury, Massachusetts until September of 2023.
38. Mother's parents' business covered the storage and shipping costs of the shipping container.

E. **SEARCH FOR LIVING ARRANGEMENTS IN THE UNITED STATES AFTER THE SALE OF THE CANADIAN HOME**

39. After the sale of the Canadian home, the Parties searched in Massachusetts for a place to live.
40. On September 8, 2023, the Parties purchased a condominium in Salisbury, Massachusetts ("the condominium").

41. The Parties listed themselves as non-immigrant aliens on their mortgage application in connection with their purchase of the condominium.
42. The Parties' shipping container with their furniture and personal belongings was emptied and moved into the condominium.
43. The Parties continued to maintain Canadian voting rights while living in the condominium.

F.  **THE FAMILY'S PRSENCE IN SALISBURY, MASSACHUSETTS**

44. The Children have family and friends in Quebec.
45. In March of 2024 the family travelled to Canada to spend time with Father's relatives for a weekend.
46. The Parties registered MG1 in Milestones Childcare and Preschool on August 4, 2024 for Pre-K.
47. On August 20, 2024, Father left the condominium and went to Quebec, Canada.
48. The Parties made plans for Mother and the Children to join Father in Canada for Labor Day weekend starting August 30, 2024.
49. On August 26, 2024, Father returned to the condominium to pack and remove his belongings.
50. On August 27, 2024, Father left to return to Canada.
51. On August 28, 2024 when the Father was in Canada waiting for the Mother and the Children to arrive for the long weekend, the Mother informed the Father that she and the children would not return to Quebec that weekend.

G.  **THE MASSACHUSETTS DIVORCE ACTION**

52. Mother filed for divorce in the Essex County Probate and Family Court on September 4, 2024 under Docket No. ES24D1750DR.
53. Father accepted service of the Divorce Summons on October 11, 2024.
54. Father filed an Answer and Counterclaim for Divorce in Essex County under Docket No. ES24D1750DR on October 22, 2024 seeking to permanently remove the Parties' Children to Quebec, Canada.

55. On October 23, 2024 Father filed a Verified Motion for Temporary Orders to establish temporary parenting time with the children.

56. That same day, Father filed his Motion for Speedy Hearing and Short Order Notice because the next available hearing date for his motion was January 2, 2025. His motion was denied on October 24, 2024.

57. On November 21, 2024, the Father and Mother signed an Agreement for Temporary Orders in the Massachusetts divorce action that the Parties would share legal custody of the Children, that Mother would have primary physical custody of the Children and that Mother would have sole use and occupancy of the former marital home located at 207 Beach Road, Unit D-1, Salisbury, Massachusetts.

58. Mother is represented by Andrea M. Wells, Esq. in the Massachusetts divorce action.

59. Father is represented by Rebecca M. Shawver, Esq. in the Massachusetts divorce action.

60. On April 30, 2025, an Order of Stay of Custody Matters was issued by Hon. Mary Rudolph Black in the Massachusetts divorce action pending determination of Father's Verified Complaint for Return of Minor Children to Canada or further orders issued by the Federal District Court in the instant matter.

H.   **PROCEDURAL HISTORY**

61. On January 21, 2025, Father filed an Application to the Central Authority in Quebec, Canada seeking return of the Children under Article 8 of the Convention.

62. On or about February 14, 2025, Father's Application was transmitted to the United States Central Authority.

63. On February 26, 2025, Father filed a Verified Complaint for Return of the Minor Children to Canada [DOC#1], and a summons was issued [DOC#3].

64. The Summons and Complaint were served upon Mother on March 3, 2025, in hand by constable [DOC#4].

65. On March 6, 2025, Father filed a Motion to File Unredacted Petition Under Seal [DOC#5], and said motion was granted by the Court on March 7, 2025 [DOC#6].

66. On March 13, 2025, Father filed a Motion to Restrain [Mother] from registering child for school [DOC#7], which was denied by the Court on May 5, 2025 [DOC#14] on the papers.

67. On March 24, 2025, Mother filed a Motion to Dismiss for Lack of Jurisdiction with an Affidavit as an attachment [DOC#8 and DOC#8-1], which was denied by the Court on May 5, 2025 [DOC#14] on the papers.
68. Mother's attorney, Brian Waller, filed his Entry of Appearance on March 21, 2025 [DOC#9].
69. On March 25, 2025, a Certificate of Consultation pursuant to LR 7.1 re Mother's Motion to Dismiss[1] was jointly filed by the Parties [DOC#10].
70. On April 7, 2025, Father filed his Opposition to Mother's Motion to Dismiss for Lack of Jurisdiction with an Affidavit as an attachment [DOC#11].
71. On April 16, 2025, a Notice of Scheduling Conference was issued by the Court [DOC#13].
72. An Article 16 Letter to Judge Black of the Essex Probate and Family Court was issued by the US Department of State, Raquel Duran, Acting Branch Chief [No DOC#].
73. On May 9, 2025, the Parties filed a Joint Certification Pursuant to Local Rule 16.1 [DOC#15] and Joint Proposed Scheduling Order [DOC#16].
74. On May 14, 2025, Father's co-counsel, Stephanie L. Curtin, filed her Entry of Appearance [DOC#18].
75. The Court changed the May 16, 2025 hearing time to 3:00 pm and set it for remote hearing [DOC#19].
76. On May 16, 2025, the Parties jointly re-filed their Recommendations for Scheduling Order [DOC#20].
77. On May 16, 2025, Father served Mother with a Request that [Mother] Produce Documents [Not filed with the Court and no DOC#].
78. On May 19, 2025, the Court issued a formal scheduling order [DOC#21 and DOC#22].
79. On May 23, 2025, Father served Mother with his Initial Disclosure.
80. On May 23, 2025, Mother served Father with a Request for Admissions and Request for Production of Documents.
81. On May 28, 2025, Father served Mother with a Request for Admission of Fact.
82. On May 30, 2025, Mother served Father with her Initial Disclosure.

---

[1] [DOC#8 and DOC#8-1].

83. On June 4, 2025, Mother served Father with her Responses to Petitioner's Request to Produce Documents.

84. On June 9, 2025, Mother served Father with her Responses to Petitioner's Request for Admissions of Fact.

85. On June 10, 2025, Father served Mother with his Response to Respondent Stacy Tardif's First Request for Admission of Fact.

86. On June 10, 2025, Father served Mother with his Response to Respondent's First Request for Production of Documents.

87. On June 13, 2025, Father served Mother with a Supplemental Response to Respondent's First Request for Production of Documents.

Date: July 14, 2025

| | |
|---|---|
| **TOMMY GIGUERE,**<br>By his attorneys,<br>**BRICK, JONES, MCBRIEN,<br> & HICKEY, LLP**<br><br>By:_/s/*Wendy O. Hickey*<br>Wendy O. Hickey, BBO#657457<br>Stephanie L. Curtin, BBO#693877<br>250 First Avenue, Ste. 201<br>Needham, MA  02090<br>(617) 494-1227<br>whickey@brickjones.com<br>scurtin@brickjones.com | **STACY TARDIF,**<br>By her attorneys,<br><br>**TURCO LEGAL, P.C.**<br><br>By:  /s/*Brian Waller*<br>Brian Waller, BBO #685672<br>29 Water Street, Ste. 301<br>Newburyport, MA  01950<br>(978) 225-9030<br>brian@turcolegal.com |