UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Tommy Giguere,

    PETITIONER

    v.                                      Civil Action No. 1:25-CV-10468-IT

Stacy Tardif,

    RESPONDENT

**RESPONDENT'S PROPOSED ORDER AND CONCLUSIONS OF LAW**

## ORDER

THIS CAUSE came before the Court on Petitioner, Tommy Giguere's Verified Complaint for Return of the Minor Children to Canada [Doc. No. 1], filed on February 26, 2025. The Court held an evidentiary hearing over three days, July 16, 2025 [Doc. No. 37], July 17, 2025 [Doc. No. 39], and July 24, 2025 [Doc. No. _____]. Having carefully considered the Complaint, the record and evidence presented, arguments from counsel, and applicable law, the Court concludes that the Complaint must be DENIED.

## CONCLUSIONS OF LAW

The Convention, as implemented by ICARA[1], establishes legal rights and procedures for the return of children who have been wrongfully removed or retained during a child custody dispute. *Abbott* v. *Abbott*, 560 U.S. 1, 130 S. Ct. 1983 (2010). When issues of this nature arise in the United States district courts have concurrent original jurisdiction over such actions. *22 U.S.C.A. § 9003(a)*. Venue is proper under 28 *U.S.C.A § 1391(b)* in the federal district where a substantial part of the events giving rise to an ICARA claim occurred. *28 U.S.C.A § 1391(b)*. If jurisdiction and venue are established, courts are vested with the authority to decide choice of forum for resolving the underlying child custody dispute. *22*

---

[1] International Child Abduction Remedies Act (hereafter "ICARA"), 42 USC 11601 et seq.

*U.S.C.A. § 9001(b)(4)*; *22 U.S.C.A. § 9003*. ICARA prohibits courts from making a final determination as to the child's custody. *22 U.S.C.A. § 9001(b)(4).*

The petitioner in an ICARA claim bears the burden of establishing a child was wrongfully removed or retained within the meaning of Article 3 of the Convention. *22 U.S.C.A. § 9003(e).* Article 3 of the Convention states:

> The removal or retention of a child is to be considered wrongful where-
>
> (a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of **the State in which the child was habitually resident immediately before the removal or retention**; and
>
> (b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

*Hague Convention, art. 3, T.I.A.S., No. 11670.* (emphasis added). If the court determines a child was wrongfully removed or retained from the child's habitual residence, the court must order the child to be returned to the habitual residence unless the respondent can establish an affirmative defense. *22 U.S.C.A. § 9003(e)(2).*

"[E]very Hague Convention petition turns on the threshold determination of the child's habitual residence; all other Hague determinations flow from that decision." *Tsai-Yi Yang* v. *Fu-Chiang Tsui*, 499 F.3d 259, 271 (3d Cir. 2007).

"A child retained abroad over objection must be returned to his or her state of habitual residence unless the respondent can establish one of the provided-for defenses or exceptions. Hague Convention arts. 12, 13; *Friedrich* v. *Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)." *Nicolson* v. *Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010). As relevant here, the court is not bound to order return of a child if the petitioner consented to or subsequently acquiesced in the removal or retention. A respondent who opposes the return of a child has the burden of establishing by a preponderance of the evidence that the petitioner consented or subsequently acquiesced. *22 U.S.C.A. §§ 9003(e)(2), 9003(e)(2)(B).*

## I. Habitual Residence

The Convention "provides that a child wrongfully removed from her country of 'habitual residence' ordinarily must be returned to that country." *Monasky* v. *Taglieri*, 589 U.S. 68, 68 (2020). "The Convention does not define 'habitual residence,' but, as the Convention's text and explanatory report indicate, **a child habitually resides where she is at home**. This fact-driven inquiry must be 'sensitive to the unique circumstances of the case and informed by common sense.'" *Id.* (citing *Redmond* v. *Redmond*, 724 F. 3d 729, 744 (7th Cir. 2013) (emphasis added)).

There are no categorical requirements for establishing a child's habitual residence. *Monasky*, 589 U.S. at 80. "Because children, especially those too young or otherwise unable to acclimate, depend on their parents as caregivers, the intentions and circumstances of caregiving parents are relevant considerations. No single fact, however, is dispositive across all cases. Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence." *Id.* at 78.

There is overwhelming evidence to support the Respondent's contention that the children were habitually resident in the United States as of August 2024. The children had resided in Massachusetts since December 2022, the majority of both children's lives had been spent away from Canada.

Further, the family relocated to the United States for the purpose of operating a business owned by Respondent's parents, and both parties were employed by the business. The family was deeply rooted in Massachusetts as of August 2024 as evidenced by the sale of their home in Canada, purchase of a home in Massachusetts, and shipping all of their furniture and possessions to their new home. The children attended daycare and preschool in the Massachusetts, learned English, had medical insurance, and made friends. The Petitioner imported his vehicle to Massachusetts in May 2024, and enrolled their daughter in preschool for the 2024-2025 school year on August 4, 2024.

Petitioner alleges that the relocation to Massachusetts was temporary based on the family's 5-year E-2 visa and the fact that they returned to Canada on a

frequent basis. Petitioner also argues that retaining eligibility to vote in Canadian elections and maintaining a Canadian driver's license also evidence their intentions to return to Canada.

None of the evidence presented by the Petitioner is dispositive, and in light of the totality of the circumstances, the Petitioner has not carried his burden. The parties demonstrated the intent to change their habitual residence from Canada to the United States and their actions, viewed objectively, permit no other conclusion. The children were habitually resident in the United States as of the date Petitioner alleges they were wrongfully retained.

## II.  Wrongful Retention.

"A removal or retention is "wrongful" under the Convention when (1) "it is in breach of rights of custody attributed to a person . . . under the law of the State in which the child was habitually resident immediately before the removal or retention; and" (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention art. 3." *Larbie* v. *Larbie*, 690 F.3d 295, 307 (2012).  Having found that the Children's habitual residence is not Canada, there is no retention, much less wrongful retention, as alleged by Petitioner.

## III.  Affirmative Defenses.

### Consent.

"[C]onsent […] focuses on [the petitioner's] intent prior to the child's retention." *Nicolson* v. *Pappalardo*, 605 F.3d 100, 105 (1st Cir. 2010) (referencing *Baxter* v. *Baxter*, 423 F.3d 363, 371 (3d Cir. 2005)). The alleged wrongful retention by Respondent occurred in August 2024. The objective and undisputed facts detailing the myriad actions taken by the family in relocating to the United States need not be repeated, however, Father does not allege that any of those actions were taken against his will. In fact, Father was an active participant in relocating to the United States.

Father also consented to the children remaining in the United States when he departed the marital home by himself to return to Canada. Father testified that he did not resign his employment from Dercy Inc. in the United States, he simply left the country. By his actions, he knowingly and willfully left the children in Massachusetts under Mother's care. He had not taken any steps to start the process of moving the family's home back to Canada, or undo any of the actions the parties had taken jointly when they moved to the United States. The Petitioner did not object to the children remaining in the United States, and he did not express the desire to take the children with him to Canada on the day he left. On top of that, he did not provide any financial support to the Respondent until he was ordered to do so in the divorce action in December 2024.

### **Acquiescence.**

"[A] defense to the Convention's requirement of return [is] to show that the party invoking a right to have the child returned "acquiesced" in retention; and it is hard to think of a more formal acquiescence than entering into a consent order providing that the other parent be awarded custody." *Nicolson* 605 F.3d at 106. "[A] clear and formal consent order by the non-U.S. parent agreeing to let a state court decide final custody would, both linguistically and for policy reasons, warrant treatment as acquiescence under the Hague Convention." *Id.* at 107.

It should be noted that in *Nicholson*, the court ultimately found that the custody order in question, which was part of an abuse prevention order, was ambiguous as to which country should determine custody rights for the child. That ambiguity was, in part, based on the wording of the order, the subjective intent of the petitioner at the time of the agreement, and the fact that the Petitioner had already filed an application to the Central Authority for return of the child at the time of the consent order.

Here, the Petitioner departed the family's home in Massachusetts to return to Canada in late August 2024. On September 4, 2024, Mother filed for divorce in Massachusetts. The parties entered into an agreement for Father to have parenting time with the children for a weekend in September 2024, however, with no terms as to custody of the minor children.

In October 2024, Father accepted service of the summons on Mother's Complaint for Divorce. It is notable that Father did not object to the jurisdiction of the Massachusetts court, or otherwise challenge that court's jurisdiction over the parties or as to the issues of custody, support, and division of the marital estate. Also in October 2024, Father filed an Answer and Counterclaim for Divorce in the pending divorce action. In his counterclaim, Father asked the court to grant him permission to return with the children to Canada, and asked the court to order the Mother to pay him a suitable amount of support for the benefit of the children.

On November 21, 2024, the parties entered into a further agreement for temporary orders. Notably, the parties agreed that:

    a. The parties would share legal custody of the minor children;

    b. Mother would have primary physical custody of the minor children;

    c. Father would have parenting time with the children, including one weekend per month in Canada; and

    d. Mother would have exclusive use and occupancy of the former marital home in Massachusetts.

The parties were unable to agree as to payment of the expenses for the former marital home or on an appropriate amount of financial support to be paid by Father to Mother for the benefit of the minor children. On those two issues, the parties made arguments to the court and requested that the Court decide and issue an order.

There was nothing ambiguous about the agreements entered into by the parties, and both parties have had the benefit of legal counsel at all relevant times in the divorce proceedings. Further, the Petitioner voluntarily submitted to the jurisdiction of the Massachusetts courts over custody of the minor children, and asked that court to decide the issue of financial support for the minor children. Father has never directly challenged the jurisdiction of the Massachusetts courts, nor has he sought appellate review of the judge's orders in the divorce action.

If Father had a subjective intent other than conceding that jurisdiction was appropriate in Massachusetts, an objective review of his actions allows no other conclusion. It was not until two months had passed *after* the Petitioner signed an

agreement for the Respondent to have primary physical custody of the minor children and for the children to continue to reside in the former marital home in Massachusetts that he filed his application to the Central Authority in Canada.

The custody agreement suffers from none of the ambiguity noted in *Nicholson*. To date, Father has raised no direct legal challenge to the validity of the Massachusetts custody agreement. Instead, Father seeks to challenge jurisdiction of the Massachusetts courts though a collateral attack in a different forum, apparently hoping for a fresh start or a do-over. There is no factual or legal basis to grant the relief sought, therefore, Father's Complaint for Return of the Minor Children must be denied.

It is notable that when Father's application was filed with the Central Authority in Canada and his Complaint was filed to commence the instant action, there was a custody order issued by Massachusetts (via adoption of the parties' agreement) that the children would continue to reside in the United States with Mother. Father had already petitioned the Massachusetts court for an order allowing him to remove the children to Canada as part of his counterclaim in the underlying Massachusetts divorce. It is difficult to characterize Father's actions in filing this action under ICARA as anything other than forum shopping, which the Convention discourages.

**IV.  Attorney's Fees.**

ICARA provides that "[a]ny court ordering the return of a child pursuant to an action brought under section 4 [*22 USCS § 9003*] shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, […] and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." *22 USCS § 9007(b)(3)*. There is no specific provision that the petitioner be responsible for the costs incurred by the respondent in defense of an unsuccessful return of the child.

The Petitioner's efforts to return the children to Canada via a petition under the Convention and ICARA, in light of his consent to the family's relocation to the United States and his subsequent acquiescence to the children remaining in the

United States allow the Court to conclude that this action was brought in bad faith. While ICARA contains no mandate for an award of attorney's fees and costs to the successful respondent, it does not prohibit such an award.

*22 USCS § 9007(b)(2)* provides that "legal fees or court costs incurred in connection with an action brought under [ICARA] shall be borne by the petitioner unless they are covered by payments from Federal, State, or local legal assistance or other programs." The petitioner's responsibility for payment of said fees and costs is subject to an order that shifts the responsibility for payment of those costs to the respondent, as noted above.

This Court has the inherent authority to order Petitioner to pay Respondent's attorney's fees if it determines that Father "acted in bad faith, vexatiously wantonly, or for oppressive reasons." *Alyeska Pipeline Serv. Co.* v. *Wilderness Soc.*, 421 U.S. 240, 258-259 (1975) (providing exceptions to standard American Rule under which parties ordinarily bear their own costs). A party acts 'vexatiously' if his actions were "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Local 265* v. *Nonotuck Resource Assocs., Inc.*, 64 F.3d 735, 737-738 (1st Cir. 1995).

The Court finds that the Petitioner consented to the children relocating to and remaining in the United States, and that he also acquiesced by way of his written agreements in the Massachusetts divorce action. The Petitioner testified that he has spent well in excess of $100,000 in this matter, and has caused the Respondent to incur significant fees and expenses in defense of his claim. The Petitioner has also wasted precious time and resources of the district court in his efforts to find a more sympathetic forum. The Court orders that the Petitioner shall be responsible for the Respondent's attorney's fees and costs incurred in this action. Respondent may file a motion and supporting affidavit detailing the attorney's fees and costs she incurred within fourteen (14) days of this order.

IT IS SO ORDERED.

Date: July ___, 2025                              _____
                                                  Hon. Indira Talwani
                                                  United States District Judge

## CERTIFICATE OF SERVICE

**The undersigned hereby certifies** that a true copy of the within Respondent's Proposed Order and Conclusions of Law was this day served upon Petitioner by electronic mail to Wendy Hickey and Stephanie Curtin, Attorneys for Petitioner, of Brick, Jones, McBrien & Hickey LLP, 250 First Ave., Suite 201, Needham, MA 02494 wendy@brickjones.com and stephanie@brickjones.com.

SIGNED under the penalties of perjury.

Dated: July ___, 2025                     _____
                                          Brian Waller