# UNITED STATES DISTRICT COURT
### DISTRICT OF MASSSACHUSETTS

**TOMMY GIGUERE**

PETITIONER

v.

**STACY TARDIF**,

RESPONDENT

**Civil Action No. 1:25-cv-10468-IT**

## THE RESPONDENT, STACY TARDIF'S, MOTION TO STAY THE JUDGMENT DATED AUGUST 26, 2025 (TALWANI, J.) REQUIRING THE RETURN OF THE MINOR CHILDREN TO CANADA AND SUPPORTING MEMORANDUM OF LAW

NOW COMES the Respondent, Stacy Tardif (hereinafter "Mother") in the above-captioned matter and moves this Honorable Court on an expedited basis to Stay the Judgment dated August 26, 2025 requiring Mother to return the children to Canada pending the adjudication of the Mother's appeal of the Order and Judgment of the Court.

## FACTUAL BACKGROUND

Petitioner ("Father") and Respondent ("Mother") are both Canadian citizens born in Quebec, Canada. Mother and the children reside in Salisbury, Massachusetts.  The parties share two minor children, M.G.1 (age 5) and M.G.2 (age 3).

The parties and their children moved to Massachusetts on December 27, 2022.  At the time the parties moved to Massachusetts, MG1 was 2 ½ years old, and MG2 was 6 months old.

Initially, the family lived in an apartment in Haverhill, MA. Prior to moving to Massachusetts, the parties owned a home in Quebec, Canada which they sold in May 2023. Upon the sale of their home in Canda, the parties searched for a home to purchase in Massachusetts.

On September 8, 2023, the parties purchased the marital home, a condominium in Salisbury, Massachusetts. At that time, shipped all of their furniture and personal belongings to the United States.   All of the parties and the children's personal possessions are in the marital home in Salisbury except for the Father's necessities.

In January 2023, both children began attending daycare at Shelly's Family Daycare in Haverhill, Massachusetts.

MG2 was enrolled full time and MG1 was enrolled three days per week.  Neither the daycare director, nor the children, spoke French. The children adapted and the daycare director observed no issues with children's integration.

The children continued to attend the daycare after they moved to Salisbury.  The family attended events with the daycare director's family and other families, including trick-or-treating in 2023 and birthday parties of their classmates. Mother made friends with the children's parents.

The parties and children obtained medical insurance in Massachusetts in January 2023. The children have a pediatrician in Massachusetts and have attended numerous appointments.

The parties filed non-resident tax returns in Canada for calendar year 2023.  The parties filed federal and state tax returns as residents of Massachusetts for calendar year 2023. The parties opened a joint bank account in Massachusetts, which their income from the business was deposited into.

In May 2024, the Father imported and registered his Ford Explorer in Massachusetts. Together, on August 4, 2024, the parties enrolled M.G.1 at Milestones Childcare and Preschool for the 2024-25 school year.

When the children arrived in the US, neither of them spoke English. The children adapted quickly and now speak better English than French.

Father resided in Massachusetts from December 27, 2022 until he left to return to Canada on or about August 27, 2024 after the parties' marriage began to break down. Mother continues to reside in the parties' home in Salisbury with the parties' children.

Mother filed for divorce in Massachusetts on September 4, 2024 in Essex County Probate and Family Court under Docket No. ES24D1750DR. Father voluntarily accepted service of the Summons on Mother's Complaint for Divorce on October 11, 2024.

The Father then filed an Answer and Counterclaim to Mother's Complaint for Divorce on October 22, 2024. In his counterclaim to the Massachusetts divorce the Father specifically requested the Court to grant him custody of M.G.1 and M.G.2, and to allow him to remove the children to Quebec, Canada.

Prior to accepting service of the summons or filing his Answer and Counterclaim, the Father entered into a stipulation whereby he had parenting time with the children in Canada from September 20, 2024 through September 22, 2024.

On November 21, 2024, the parties entered into another Agreement for Temporary Orders in the pending divorce action whereby the parties agreed, in pertinent part, to have shared legal custody of the minor children , with Mother having primary physical custody of the minor

children. The parties further agreed Father has parenting time with the children every-other weekend, with one weekend per month to be spent in Canada.  The Massachusetts Probate and Family Court issued a Temporary Order on December 2, 2024 (Black, J.) incorporating the Stipulation dated November 21, 2024 into its Order.

Throughout the pendency of the Father's petition, both parties continued to operate under the provisions of the agreements and orders in the Massachusetts divorce action.

On January 21, 2025, Father filed an Application to the Central Authority in Quebec, Canada seeking the return of the children under the Hague Convention. In February 2025, Father's Application was transmitted to the United States, and on February 26, 2025, the Father filed a Complaint for Return of the Minor Children to Canada.   The Mother filed a motion to dismiss on March 24, 2025 which was denied on  May 5, 2025.  The Father filed a motion to restrain the Mother from enrolling the children in Massachusetts which was also denied on May 5, 2025. A three-day evidentiary hearing was held on July 16, 17, and 24, 2025.

On August 26, 2025, a Judgment and Order entered requiring the children be returned to Canada. Mother is now appealing the Judgment and is filing her Notice of Appeal herewith.

## **ARGUMENT**

Mother requests an expedited Stay of the Court's August 26, 2025 Judgment through the conclusion of her appellate proceeding as the Court incorrectly determined Canada was the children's habitual residence and in error failed to find Father consented to or acquiesced to the children residing in Massachusetts

In order to prevail on a motion to stay, the movant must show the following:  (1) the likelihood of success on appeal; (2) the threat of irreparable harm if the stay or injunction is not

granted; (3) the absence of harm to opposing parties if the stay is granted; and (4) any risk of harm to the public interest. <u>F.T.C. v. Mainstream Marketing Services, Inc.</u>, 345 F.3d 850, 852 (10th Cir.2003). Ultimately, whether to grant a stay and delay the return of the child is within the Court's discretion. <u>Walsh v. Walsh</u>, 221 F.3d 204, 213 (1st Cir.2000).

The Mother's request for a stay of the judgment requiring the children to return to Canada should be granted as the Mother has a superior likelihood of success on appeal; there is no harm to the Father in granting the stay pending the appeal; and there is extraordinary harm to the children if the stay is not granted if the Mother is successful on her appeal.

## I.    <u>The Mother has a superior likelihood of success on appeal</u>

### A.    <u>The Petitioner did not establish Canada was the habitual residence of the children</u>

Removal under the Hague Convention is only appropriate if the child is being retained in a country *other than* his or her place of habitual residence. <u>Mendez v. May</u>, 778 F.3d 337, 344 (1st Cir. 2015).   The place where *a child is at home, at the time of removal or retention, ranks as the child's habitual residence.* <u>Monasky v. Taglieri</u>, 589 U.S. 68, 77 (2020)  A child's habitual residence is the place where he or she has been physically present for an amount of time sufficient for acclimatization, and which has a degree of settled purpose from the child's perspective.  <u>Darin v. Olivero-Huffman</u>, 746 F.3d 1, 11 (1st Cir. 2014).   The required degree of settled purpose does not necessarily entail an intention to stay in the place indefinitely; it may be for a limited period. <u>Id</u>.  For example, a settled purpose with respect to residence could be education, business or profession, employment, health, family or mere love of the place. <u>Id</u>.

In <u>Monasky v. Taglieri</u>, 589 U.S. 68 (2020), the Supreme Court clarified the determination of a child's "habitual residence" under the Hague Convention does not depend on

an actual agreement between the parents about where to raise the child. Instead, habitual residence is determined based on the totality of the circumstances, not any parental agreement. Id. The critical factors in making this determination include the child's integration into a family and social environment, the age and maturity of the child, parental intentions, changes in geography, duration of stay, and connections to the location Id. No single fact, however, is dispositive across all cases. Common sense suggests that some cases will be straightforward: Where a child has lived in one place with her family indefinitely, that place is likely to be her habitual residence. Id.

Canada was not the habitual residence of the children from the prospective of the children for numerous reasons. First, the children began living in the Commonwealth on December 27, 2022. MG1 had spent nearly half of her life and MG2 had spent most of her life residing in Massachusetts where their parents purchased a home in Salisbury on September 8, 2023. The establishment of a habitual residence requires an actual change in geography, as well as the passage of an appreciable amount of time and when the child moves to a new country accompanied by both parents, who take steps to set up a regular household together. International Child Abduction Remedies Act, § 4(b), 42 U.S.C.A. § 11603(b); Hague Convention on the Civil Aspects of International Child Abduction, Art. 1 et seq., 1988 WL 411501. Koch v. Koch, 450 F.3d 703 (7th Cir. 2006). The period may also not be long as it was here, which provides even greater support for the fact that Massachusetts is the habitual residence of the children and not Canada. Id.

The First Circuit has also held a new residence can be formed without the intention of staying in the place indefinitely as the Father claimed. Darin v. Olivero-Huffman, 746 F.3d 1, 11 (1st Cir. 2014). For example, a settled purpose can be temporary with respect to residence, and

could be for reasons such education, business or profession, employment, health, family or merely love of the place. Id. This is precisely the facts presented as the parties arranged for employment, housing, and childcare in Massachusetts. Id.

The parties also imported their vehicle and registered it in Massachusetts and the parties obtained visas to allow them to live and work legally in the United States. The parties secured medical care for themselves and the children, who were provided for by a Massachusetts pediatrician. They also opened a joint bank account in Massachusetts and filed both state and federal taxes as Massachusetts residents, while filing as non-residents in Canada. Critically, the parties sold their home in Canada and moved the contents of their home and their belongings to their new home in Massachusetts. As a result, the facts clearly demonstrate a clear relinquishment of Canadian residence and their intentions to make Massachusetts their habitual residence.

Further, there is strong evidence here of the children's acclimatization to the Commonwealth which precludes the granting of the petition. International Child Abduction Remedies Act, § 2, 42 U.S.C.A. § 11601. Neergaard-Colon v. Neergaard, 752 F.3d 526 (1st Cir. 2014). A child's acclimatization to a location reflected by a change in geography coupled with the passage of a meaningful period of time is a key factor in the habitual-residence analysis. Sanchez-Londono v. Gonzalez, 752 F.3d 533, 542 (1st Cir. 2014).

The children have strong durational ties to Massachusetts as they have lived here the majority of their young lives. Monasky v. Taglieri, 589 U.S. at 78. MG1 had spent nearly half her life and MG2 had spent the majority of her life residing in Massachusetts. The children's

daily routines including daycare, schooling, medical care, and social activities are in Massachusetts, demonstrating substantial integration into the local environment. Id.

In January 2023, both children began attending daycare at Shelly's Family Daycare in Haverhill, MA.  MG2 was enrolled full time and MG1 was enrolled three days per week. The daycare had four other children attend. Neither the daycare director, nor the children, spoke French.

The children adapted and the daycare director observed no issues with their integration and children continued to attend the daycare after they moved to Salisbury.   The children arrived in the United States speaking no English but have since adapted and can speak fluently. Mauvais v. Herisse, 772 F.3d 6, 14 (1st Cir. 2014).   In fact, the children now speak better English than they do French.    The children have many friends and participate in social activities within the community. The family attended events with the daycare director's family and other families, including trick-or-treating in 2023 and birthday parties of their classmates.  Moreover, all of the children's belonging are in the former marital home in Massachusetts.

In Mauvais v. Herisse, 772 F.3d 6, 14 (1st Cir. 2014), the Court found the children were acclimatized to Canada after living there for two years. The children attended daycare, primary school there, attended church, developed Canadian accents, the children spent almost their lives there. The Court could not find that the children were acclimatized to any other country.   It can be reasonably inferred from all these pertinent facts that from the perspective of the children – despite the parties' disagreement-- they were acclimatized to the United States. Mauvais v. Herisse, 772 F.3d 6, 14 (1st Cir. 2014).  The facts here are strikingly similar and on-point.

Furthermore, in certain circumstances, 'a child can lose its habitual attachment to a place even without a parent's consent ... if the objective facts point unequivocally to a person's ordinary or habitual residence being in a particular place....' . <u>Mauvais v. Herisse</u>, 772 F.3d 6, 14 (1st Cir. 2014). Massachusetts was undoubtedly the children's habitual residence for the past three years and as result, there can be no wrongful retention in the United States. Accordingly, the Father failed to establish a prima facie case of improper removal or retention. Therefore, the Court erred in granting the Father's Petition. As a result, the stay should be granted due to the strong likely success of the Mother's appeal. <u>F.T.C. v. Mainstream Marketing Services, Inc.</u>, 345 F.3d 850 (10th Cir. 2003).

### B. <u>Father consented to the removal of the children from Canada and then acquiesced to the retention of the children in Massachusetts</u>

The petition is further precluded because Father both consented to and acquiesced in the children's relocation to Massachusetts. Consent and acquiescence are two separate and analytically distinct affirmative defenses to a petition for return of a wrongfully removed child under the Hague Convention on Civil Aspects of International Child Abduction, and its implementing statute, the International Child Abduction Remedies Act (ICARA). 22 U.S.C.A. § 9003(e)(2)(B). <u>Padilla v. Troxell</u>, 850 F.3d 168 (4th Cir. 2017).

The consent defense addresses whether the petitioner agreed to the child's removal or retention beforehand, while the acquiescence defense concerns whether the petitioner accepted or agreed to it afterward. <u>Padilla v. Troxell</u>, 850 F.3d 168 (4th Cir. 2017). Consent may be evinced by the petitioner's statements or conduct, which can be rather informal. <u>Nicolson v. Pappalardo</u>, 605 F.3d 100, 105 (1st Cir. 2010). Acquiescence tends to require more formality than consent— e.g., testimony in a judicial proceeding, a convincing written renunciation of rights, or a

consistent attitude over a significant period of time. Darin v. Olivero-Huffman, 746 F.3d 1, 16 (1st Cir. 2014).

The Court, in error, failed to determine the Father consented to or subsequently acquiesced in the removal of retention of the children. The consent defense involves the petitioner's conduct *prior to* the contested removal or retention, while acquiescence addresses whether the petitioner subsequently agreed to or accepted the removal or retention. Moura v. Cunha, 67 F. Supp. 3d 493, 501 (D. Mass. 2014).

The key inquiry to the consent defense is the petitioner's subjective intent, including the nature and scope of the intent, *prior* to the August 2024 retention.  In re Kim, 404 F. Supp. 2d 495, 516 (S.D. N.Y. 2005).

 In In re Kim, the District Court held in order to establish a consent defense, respondent must establish by a preponderance of the evidence that petitioner had the subjective intent to permit Respondent to remove and retain the child for an indefinite or permanent time period. Id. The focus must be on the parents conduct *prior* to August 2024.  Darin v. Olivero-Huffman, 746 F.3d at 15.

Consent is an inquiry that may be evinced by the petitioner's statements or conduct, which can be rather informal. Nicolson, 605 F.3d at 105.  As the Third Circuit has held, in examining a consent defense, it is important to consider what the petitioner actually contemplated and agreed.   Baxter v. Baxter, 423 F.3d 363, 371 (3d Cir.2005).

The Father claims the alleged wrongful retention occurred in August 2024. The objective and undisputed facts surrounding the family's relocation to the United States need not be repeated. However, it is important to note that Father does not contend that any of those actions

were taken against his will.  But strikingly to the contrary, he was an active participant in the relocation process from Canada to the United States from 2022 until 2024 and only objected after he alone returned to Canada and the Mother filed for divorce.

The Father actively facilitated the relocation to Massachusetts.  He participated in arranging housing, employment, daycare, medical care, and legal documentation necessary for the family to reside in Massachusetts.  He imported the family vehicle, registered it locally, and took part in opening bank accounts and filing taxes as a Massachusetts resident.  It was not until the marriage between the parties started to breakdown that the Father no longer consented to living in the United States and sought to relocate back to Canada. These actions clearly demonstrate his prior consent.  Nicolson v. Pappalardo, 605 F.3d 100, 105 (1st Cir. 2010)

Further, the parties moved together as a family unit and lived together for two years even selling the former marital home and purchasing a new one.  Thus, this matter is not one where one party moved with the children without the other parent. See Nicolson, 605 F.3d at 106.

The Court found here Father explained to his family and friends that moving to Massachusetts would be a "good experience."  The Court found Father told his sister and his friend Melanie that he wants to start a company in the United States and see if the business would work. The Court found a mutual friend recalled the parties discussed a "long term project" in the US.

Moreover, it would have been impossible for Mother to unilaterally move the family to another country without Father's active cooperation and participation. Father both participated in and helped plan for the move.  The parties applied for E-2 visas and the family was granted E-2 visas on November 10, 2022.  As part of their preparation for the move, the parties jointly

entered the US the next day on November 11, 2022, to obtain their I-94 numbers in connection with their visas. A consent inquiry focuses on the time prior to the retention and the focus must be on the parties' conduct prior to Father's relocating back to Canada and filing this petition. Darin v. Olivero-Huffman, 746 F.3d 1, 15 (1st Cir. 2014). All the Father's actions prior to the breakdown of the marriage evidenced his consent to living and raising the children here.

Father was employed in the United States for nearly two years, and he does not claim that he was compelled to do so or that his employment was anything other than voluntary.

It was only after Father was confronted with the topic of divorce by Mother, that he claimed Mother had wrongfully retained the children in Massachusetts. Given these facts, it is implausible and illogical to assert that Father did not consent to the family's relocation to the United States. Therefore, any reasonable analysis of Father's actions and conduct, he consented to the parties relocating to Massachusetts. Nicolson, 605 F.3d at 105.

In addition, the defense of acquiescence pertains only to what happens "post-retention." Baxter, 423 F.3d at 371. The relevant period that must be considered is August 2024 to the time the Father filed his petition to return the child, on February 26, 2025. Id.

Acquiescence tends to require more formality than consent—e.g., testimony in a judicial proceeding, a convincing written renunciation of rights, or a consistent attitude over a significant period of time. Id. When attempting to characterize ambiguous conduct as a basis for inferred acquiescence, courts employ a pure subjective intent inquiry Id.

Father further acquiesced by fully participating in litigation in Massachusetts. Larbie v. Larbie, 690 F.3d 295 (5th Cir. 2012). Consent for a tribunal to make a final custody determination, which may be established by entry of a temporary custody order, is sufficient to

establish an affirmative defense under the Convention. <u>Larbie v. Larbie</u>, 690 F.3d 295, 298 (5th Cir. 2012). The Father gave clear and unequivocal consent for the Massachusetts court to make a final custody determination, and also for the Mother to continue to have primary physical custody of the children in Massachusetts. <u>Id</u>.

The Court in <u>Larbie v. Larbie</u>, 690 F.3d 295 (5th Cir. 2012), found the Mother gave clear and unequivocal consent for Texas court to make final custody determination as mother answered divorce suit in Texas and filed counterpetition seeking affirmative relief. <u>Id</u>.

Likewise, the Father here gave clear and unequivocal consent for the Massachusetts court to make a final custody determination. <u>Larbie v. Larbie</u>, 690 F.3d 295, 298 (5th Cir. 2012). He filed an answer and counterclaim, sought his own temporary orders, and engaged with the Massachusetts courts regarding the children's custody and care. By voluntarily invoking the jurisdiction of Massachusetts courts and litigating in the Massachusetts Probate Court, the Father manifested his acceptance of the children's presence and residence in the Commonwealth. Therefore, the Father in filing this petition is essentially engaging in international forum shopping which the Convention seeks to prevent. <u>Larbie v. Larbie</u>, 690 F.3d 295, 298 (5th Cir. 2012).

Further, the Father also willfully, knowingly, and voluntarily agreed to several temporary custody orders which were made orders by the Probate Court.[1] There was nothing ambiguous about the agreements entered into by the parties, and both parties have had the benefit of legal counsel at all relevant times in the divorce proceedings. The parties had equal bargaining power at the time the Stipulation was executed, and Father's signing was completely voluntary and

---

[1] The Court mischaracterizes these orders within the judgment as the Stipulation was entered by the Probate and Family Court as an Order.

uncoerced.  Darin v. Olivero-Huffman, 746 F.3d at 17.  Within these orders, the Father specifically agreed Mother would continue to have primary physical custody of the minor children.  The Stipulation was also executed by the parties and entered by the Probate Court as an Order.  Thus, the Stipulation itself is evidence of Father's agreement for Mother to continue to have custody of the minor children within the Commonwealth of Massachusetts.   A clear and formal consent order by the non-U.S. parent agreeing to let a state court decide final custody would, both linguistically and for policy reasons, warrant treatment as acquiescence under the Hague Convention. Nicolson, 605 F.3d at 107.  This is precisely the affirmative conduct by the Father here.

Moreover, not only did the Father recognize and obey the orders entered by Massachusetts, but he did not seek any relief from any court in Canada.  In fact, the Father sought relief to remove the children from their home state in Massachusetts to Canada. There is nothing in the record to reflect that Father disagreed that Massachusetts was not the proper forum.  Larbie v. Larbie, 690 F.3d 295, 309 (5th Cir. 2012)  Notably, Father filed his petition before this Court *after* he had already agreed to allow Mother to continue to have custody and after he filed his counterclaim for divorce.

In addition, Father entered into a Stipulation with Mother for parenting time rather than pursue his own motion for parenting time before the Probate and Family Court. Further, the Father continued to have parenting time with the children in Massachusetts during the pendency of the petition.

The Father's agreement to temporary orders and filing of his own counterclaim for custody and divorce reflects Father's voluntary submission to the jurisdiction of Massachusetts for determination of child custody, and this Court erred in holding otherwise.  The petition filed

14

by Father is nothing more and nothing less than impermissible forum shopping and wrongful use of the principles of the Hague Convention.   Kufner v. Kufner, 519 F.3d 33, 38 (1st Cir.2008). Therefore, for the reasons outlined herein, the Mother has a strong likelihood of success on appeal such that a stay of the order to return the children to Canada pending the Mother's appeal should be granted.

## II.    There is extraordinary harm to Mother and children if the stay is not granted, and little harm to Father

In the absence of a stay, the children will leave this country with their Father and be forced to return to a place they haven't lived in in almost three years, the majority of their young lives.

Returning the children to Canada and thereby removing them from their place of residence would certainly cause irreparable injury to both the children and the Mother.  A forced move at this time would cause disruption in the children's lives and Mother's life.

Further, Father would not suffer irreparable harm if a stay if granted, as by his own agreement, as he may continue to have parenting time every other weekend with the children from Friday at 4:00 pm until Sunday at 4:00 pm with one weekend being in Canada, which he has had and may continue to have during the pendency of the appeal, which is the temporary order for parenting time and which may remain in place throughout the pendency of Mother's appeal.

## III.    There is no harm to the public interest in granting the stay

Finally, to the extent the public interest could be affected by this request to stay, no harm would be done by continuing the current state of affairs pending the Mother's appeal.  The

Father already has parenting time with the children every other weekend, which would continue to remain in place throughout the pendency of the appeal.

Further, the public interest would be harmed if the children were removed from Massachusetts and returned to Canada despite the Father's consent to the jurisdiction of the Massachusetts Probate and Family Court and agreement as reflected in the Stipulation and Temporary Order that Mother has primary physical custody of the children.

For all these reasons, Mother respectfully requests the Judgment and Order to return the Children to Canada be stayed during all appellate proceedings and the temporary orders for custody remain in effect pending her appeal.

## **REQUEST FOR HEARING**

The Mother submits that a hearing may assist the Court in resolving the issues raised herein and therefore, requests an opportunity to be heard by oral arguments in support hereto.

## **L.R. 7.1(a)(2) CERTIFICATION**

Consistent with L.R. 7.1(a)(2), Mother asserts the parties have conferred and been unable to resolve the issues raised herein.

Dated: August 29, 2025                     Respectfully Submitted,

                                           STACY TARDIF,
                                           By her Attorney,


                                           */s/ Matthew P. Barach*
                                           Matthew P. Barach (BBO # 630245)
                                           *Attorney for the Respondent*
                                           Barach Law Group LLC
                                           40 Speen Street, Suite 205
                                           Framingham, MA 01701
                                           P: 617-694-9700 / F: 508-318-6329
                                           mbarach@barachfamilylaw.com




### CERTIFICATE OF SERVICE

I certify that on August 29, 2025, a true and correct copy of the foregoing was served upon all parties of record via the Court's CM/ECF system and via email.


Dated: August 29, 2025                     */s/ Matthew P. Barach*
                                           Matthew P. Barach (BBO # 630245)
                                           Attorney for the Respondent
                                           Barach Law Group LLC
                                           40 Speen Street, Suite 205
                                           Framingham, MA 01701
                                           P: 617-694-9700 / F: 508-318-6329