UNITED STATES DISTRICT COURT
For the DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 1:25-CV-10468-IT

TOMMY GIGUERE,
     PETITIONER

v.

STACY TARDIF,
     RESPONDENT

## PETITIONER'S OPPOSITION TO RESPONDENT'S "MOTION TO STAY THE JUDGMENT DATED AUGUST 26, 2025 (TALWANI, J.) REQUIRING THE RETURN OF THE MINOR CHILDREN TO CANADA AND SUPPORTING MEMORANDUM OF LAW"

NOW COMES Tommy Giguére, Petitioner (hereinafter "Father") in the above captioned matter, and respectfully requests, that this Honorable Court **deny** the Respondent's, Stacey Tardif, (hereinafter "Mother's") Motion to Stay the U.S. District Court's August 26, 2025 Judgment pending her appeal.

On August 26, 2025 the US District Court entered a Judgment (Talwani, J.), which required the Mother to return the minor children, MG1 and MG2, to Quebec, Canada no later than September 2, 2025 or to provide Father with the Children's passports and allow him to take temporary custody of the Children so that he may return the Children to Quebec.

In light of the order, Father registered MG1 for Kindergarten in Quebec

where she is due to start school on September 2nd.  Father also filed a custody petition with the court in Quebec on August 29, 2025, in accordance with the Judgment.  What the Court did not know at the time of entering the Judgment was that, under the parties' existing temporary parenting plan in the now-stayed Massachusetts divorce action, Father was scheduled to have parenting time with the Parties' children in Canada this weekend beginning on August 29, 2025 at 4 PM.  As Father understands the Judgment, regardless of whether Mother returns the children to Canada on September 2nd, or earlier, once the children are back in Canada, "[u]ntil further orders are entered by a Canadian court of competent jurisdiction, neither party shall apply for or facilitate the issuance of any passports or other immigration related paperwork for the Children **or remove the Children from Canada.**"  (Emphasis supplied).  In other words, but for the one-week stay issued by the Court on August 29, 2025, at 5:08 PM the Judgment had already been essentially complied with.

Mother sought an expedited stay of the Judgment at 3:56 PM on the Friday before Labor Day Weekend.  Her timing was unfortunate.  Had she filed just one day earlier, Father would have had time to respond before the Court issued the one-week stay.  In her motion, Mother neglected to inform the Court that the children would be in Canada this weekend. As a result, the eleventh hour one-week stay

will cause MG1 to miss her first day of kindergarten in Quebec and potentially result in her briefly starting kindergarten in Salisbury, only to potentially return to Quebec to begin school there.

Adding insult to injury with her poor timing, Mother's motion fails to meet the requisite legal standard for such a successful motion to stay. The four-part test for a motion for stay is as follows: "(1) whether the stay applicant has made a strong showing that [she] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure other parties interested in the proceeding; and (4) where the public interest lies." Chafin v. Chafin, 568 US 165, 133 S.Ct.1017, 1027 (2013), citing Hilton v. Braunskill, 481 U.S. 770, 776-77, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987).

## I.    Whether the stay applicant has made a strong showing of likelihood of success on appeal.

Mother has failed to establish a strong showing of likelihood of success on the merits of her appeal. Mother's burden is high because the standard of review on appeal is one of clear-error, see Monasky v. Taglieri, 140 S. Ct. 719, 730, 589 U.S. 68, 84 (2020). Mother's motion to stay selectively presented only the facts she believed supported her position, while disregarding the majority of the trial judge's findings, which were based on Father's evidence. Likewise, she ignores

all of the findings where her evidence was found to be lacking in credibility and instead reiterates her evidence almost as if the trial never happened and the judge had made no findings.

Despite Mother's assertion in her motion to stay, the court did in fact find[1] the Children's habitual residence to be Canada at the time of their wrongful retention in the US. In support of this conclusion, the Court found the following facts, among others:

(a) The Parties and Children were all born in and continue to be citizens of Canada and were/are only in the US on temporary non-immigrant visas (FF[2], pp. 2, 5).

(b) All of the Parties extended families and thus the Children's extended families live in Quebec[3] (FF, p. 2).

(c) The Parties agreed to move to the US on a temporary basis to assist with Mother's parents' company and determine if they liked living here and if

---

[1] It is worth noting Mother did not include one citation to the Court's Findings of Fact in her Motion to Stay, instead choosing to continue to assert the facts she wanted the court to find while ignoring the actual findings.

[2] The Court's August 26, 2025 Findings of Fact and Conclusions of Law are abbreviated as FF followed by the page on which the finding was made.

[3] Mother's parents live in Florida 6 months of the year with the other 6 months mostly in Quebec but also in MA as needed.

not they would go back (FF, p. 5).

(d) The Family returned to Quebec for every major holiday and approximately every three weeks while living here.  When they were not in Canada, they were often hosting family and friends from Canada. Neither Father nor the children made friends in the US up until the time of their wrongful retention in August, 2024. (FF, p. 14).

(e) The Parties continued to have bank accounts in Canada and Mother opened an account for them in Massachusetts to which she added Father's name (FF, p. 7).

(f) The children did not make friends when living in Haverhill (FF, p. 8). There are no children in Salisbury in their neighborhood (FF, p. 14).

(g) The Children attended a very small in-home daycare with only four other children (FF, p. 14).

(h) The Children attended a few birthday parties (somewhere between 1-2 or 4-5) during their time here (FF, p. 14).

(i) In March, 2024, Father expressed his unhappiness and desire for the family to return to Canada when their i94 numbers expired in November 2024 (FF, p. 9).  Mother acknowledged it was possible to return to Canada but didn't want to leave unless she was certain that is what he

really wanted (FF, p. 9).

(j) Over the next few months Mother regularly raised the topic of staying in Massachusetts longer than November and Father reiterated each time that he wanted the family to return to Canada when their i94 numbers expired in November (FF, p. 10).

(k) The Parties did not import their car to the US until April, 2024 when they learned it was mandatory to do so (FF, p. 12).

(l) Father never imported his motorcycle (FF, p. 2).

(m)    Both parties maintained Canadian driver's licenses during the relevant period of time (FF, p. 2).

(n) The Children maintained health insurance in Canada and got health insurance in the US because it was required for daycare. They had a pediatrician in the US and in Canada. (FF, p. 14-15)

(o) Meanwhile, the court also found during the time Mother was leading Father to believe they would all return if he continued to be unhappy, she was taking steps to give up the family's Canadian residence. Specifically, Mother and/or her accountant typed up the NR73 tax form and Mother presented it to Father for his signature. He did not sign because he did not agree with the typed responses and the parties sat

together and made hand changes at which point the Father signed the document with the handwritten changes.  Thereafter Mother or her accountant submitted the typed version to the tax authorities in Canada which contained the same statements Father had refused to sign and omitted other checked boxes Father had checked, the details of which are laid out in the Findings of Fact (FF, pp. 10-12).

(p) Father agreed to enroll MG1 in Preschool in August 2024 until returning to Canada in November because Mother told him the daycare did not have room for her to stay there (FF, p. 15).

(q) Father stipulated to temporary parenting plans in connection with the Mother's divorce action because Mother would not let Father see the children without written stipulations at a time when she had unilaterally changed the locks on their Townhouse and had possession of the children's passports (FF, pp. 19-20).

The Court's findings make it abundantly clear that portions of Mother's evidence was either not credible, lacked candor, was less credible than Father's evidence, or contradictory to the stipulated facts (See, FF pp. 3, 9, 10-12, 13). Findings of credibility, or lack thereof, are determinations left to the discretion of the trial judge and will not be disturbed on appeal unless clearly erroneous.  "In

actions that are tried to the court, the judge's findings of fact are to be honored unless clearly erroneous, paying due respect to the judge's right to draw reasonable inferences and to gauge the credibility of witnesses. A corollary of this proposition is that, when there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. . . . [W]hen a case has been decided on the facts by a judge . . . an appellate court must refrain from any temptation to retry the factual issues anew." Johnson v. Watts Regulator Co., 63 F.3d 1129, 1138 (1st Cir. 1995) citing Adelson v. Hananel, 652 F.3d 75, 86 (1st Cir. 2011).

Based on the evidence before the Court, the finding that **Canada was the Children's habitual residence** at the time of the wrongful retention is appropriate. "Because locating a child's home is a fact-driven inquiry, courts must be "sensitive to the unique circumstances of the case and informed by common sense." Monasky v. Taglieri, at 727 citing Redmond v. Redmond, 724 F. 3d 729, 744 (7th Cir. 2013). "For older children capable of acclimating to their surroundings, courts have long recognized, facts indicating acclimatization will be highly relevant." Id. For younger children, such as MG1 and MG2, acclimatization "depends on their parents as caregivers, making the intentions and circumstances of caregiving parents … relevant considerations." Monasky v. Taglieri, at 727. In this instance,

the trial Judge heard the evidence, weighed credibility of that evidence, reviewed the totality of the circumstances as <u>Monasky</u> instructed. The Judge found that these young children, whose entire extended family live in Quebec, who regularly travel back and forth to Quebec, and whose parents came here on a temporary basis had not abandoned their habitual residence of Quebec as of August, 2024.

There is no question that Father consented to the children remaining in Massachusetts until August, 2024, but withdrew his consent in August, 2024. Father's actions after August, 2024, speak to whether or not he acquiesced to their remaining here. After learning of Mother's divorce, Father immediately took all of the steps he knew to be available to him to secure the children's return to Quebec. Along the way, when faced with either spending no time with the children or conceding to temporary parenting plans, he consented to temporary measures in order to avoid losing touch with his young children completely. Despite Mother's claims to the contrary, Father did file a verified motion seeking time with the children and a motion for speedy hearing and short order of notice to get in front of a judge more quickly – his motions were denied (FF, p. 20). Faced with limited options, Father consented to temporary orders, but at no point did he relent on his claim that the children should return to Quebec. Mother is trying to conflate Father's limited cooperation with acquiescence, when in reality his position has

always been that Massachusetts is not the children's habitual residence but rather Quebec is. To hold otherwise, would penalize Father for attempting to maintain a relationship with his children under extremely restrictive circumstances, while simultaneously undermining the purpose of the Hague Convention's protections against wrongful retention.

Mother's defense is that Father waived his right to seek relief under the Hague Convention when he participated in her divorce action and filed a counterclaim to remove the Children back to Quebec rather than moving to dismiss that case for lack of subject matter jurisdiction. However, the divorce case remains open and in the discovery phase and the custody components have been stayed pending the outcome of this case. Father was under no obligation to pursue a course of action preferred by Mother and is fully entitled to seek relief under the Hague Convention in this Court prior to any final custody determination by the family court.

Father did not give up his pursuit for a path for the Children's return to Quebec and actively pursued alternative avenues even after executing the stipulation for temporary orders. His efforts eventually lead to his discovery of the Hague Convention on Civil Aspects of International Child Abduction and to counsel versed in this process.

"[T]he defense of acquiescence pertains only to what happens post-retention."  Darin v. Olivero-Huffman, 746 F.3d 1,16 (2014).  "The exceptions are 'narrow' and must be narrowly construed."  42 U.S.C. § 11601(a)(4).  In this case, Father expressed his objection to the Children remaining in Massachusetts in his answer and counterclaim wherein he sought permanent removal of the Children back to Quebec.  And, once his Petition in this Court was filed, he sought a stay of the custody component of the Divorce action in the Probate and Family Court which has been stayed pending the outcome of this matter.  Father's signing of the stipulation for temporary orders provided only for temporary custody and ought not to be read as if it was a permanent acquiescence to the Children remaining in Massachusetts or a waiver of Hague Convention rights.  Nicholson v. Pappalardo, 605 F.3d 100, 106-107 (2010).  Much like Nicholson, this is a case of temporary custody.  "Permanent custody is a different almost certainly of greater importance to the parents and not one that would necessarily be addressed in any way in a consent order providing for temporary protection and custody."  Id at 108.

Accordingly, like in Nicholson, "we do not have a 'clear and unequivocal' expression of an agreement by [Father] to have final custody determined in a Massachusetts court, nor a 'convincing written renunciation of rights' to this effect."  Id. at 108-109.

II.     <u>**Whether the Applicant Will Be Irreparably Injured Absent A Stay.**</u>

Mother will not be irreparably harmed absent a stay of the Judgment because even if the Children are returned to Canada during the pendency of the appeal, the appeal itself is not moot and a re-return order can be entered.  See, <u>Chafin v. Chafin</u>, 133 S.Ct. 1017, 568 U.S. 165 (2013).  "Even if [Canada] were to ignore a re-return order, this case would not be moot.  The US courts continue to have personal jurisdiction over [Father] and may continue to command [he] take action under threat of sanctions." <u>Chafin</u> at 1020 citing <u>Nken v. Holder</u>, 556 U.S. 418, 434, 129 S.Ct. 1749, 173 L.Ed.2d 550 (2009).  This is even more true in the instant matter because there is still an open divorce case pending in the Essex Probate and Family Court in which Father is required to participate.  In the event of a re-return order, Father would have no choice but to comply or risk facing negative consequences in the divorce action.

Mother cannot claim irreparable harm to herself, as she is literally the only family member on either side of this extended family living in Massachusetts and certainly the only one asserting the need or desire to remain here.  The Court found Mother has the ability to work remotely in her current role from Quebec so she could easily return home with the children even on a temporary basis pending the final outcome of her appeal and continue her same job.  Mother's entire extended

family reside in Quebec (aside from her parents who reside in Florida in the winter) and her parents' Quebec home is only occupied by her parents when they are in Quebec.  Mother had no issue living with her parents in Haverhill so there should be no issue living with them, even if temporarily in Quebec during the pendency of her appeal.

Finally, it should not be overlooked that Mother's presence in Massachusetts continues to be on a non-immigrant E-2 visa which is nearly three years into the five year term of validity at this point.

### III.    Whether Issuance of the Stay Will Substantially Injure Other Parties Interested in the Proceeding

The record is clear that essentially all of the Children's family ties, on both Petitioner and Respondent's side of the family including grandparents, brothers, sisters, aunts, uncles, cousins, and lifelong friends live in Quebec. The Parties and children did not form meaningful friendships in the US during the relevant period and there are no other children in the neighborhood. During the relevant timeframe, their social life consisted of spending weekends with their parents, hosting family and friends from Quebec, or visiting family or friends in Quebec. There are childcare / school options for both children in Quebec which they could seamlessly slide into.  The Children are fluent in French, and the natural objects of their affections are in Quebec.  There is no injury to the Children if the motion to

stay is denied.

MG1 has not yet started elementary school. Even after next week, MG2 remains too young for elementary school and continues in a daycare in Massachusetts which at capacity can accommodate 6 children. MG1 will start kindergarten on September 2nd and, upon information and belief, is registered in both Quebec and Salisbury MA. Either way we have reached a critical time period where she will be harmed by issuance of even this one-week temporary stay given the fact that Mother has not made a strong showing of a high likelihood of success on the merits of her appeal. In other words, it is more harmful to MG1 to grant the stay.

## IV.    Where the Public Interest Lies.

The public interest would not be served by issuing a stay which would essentially condone Mother's wrongful retention of the Minor Children, and would also be violative of the Convention, the terms of which call for the Minor Children to be returned to Canada. Indeed, stays conflict with the Convention's mandate of prompt return to a child's country of habitual residence and allowing routine stays for a losing parent will only serve to encourage more appeals thus undermining the goals of the Convention. Chafin at 1027. Granting a stay in this case would not

only delay justice for these Children but would also signal to other litigants that delay tactics can effectively undermine the Convention's purpose. This Court ought not to accept Mother's invitation to issue a routine stay just because she wants another bite at the proverbial apple.

WHEREFORE, the Father requests that this Honorable Court **deny** the Mother's Motion to Stay and order Mother to pay his reasonable legal fees and costs associated this emergency response over the Labor Day Holiday weekend.

Father also requests the court deny Mother's request for a hearing and, instead, rule on the papers.  Father's lead counsel is continuing with an ongoing trial next week and has already lost a day of trial preparation time in having to respond to Mother's Motion to Stay.  The earliest date on which Father's counsel can participate in a hearing on the Motion to Stay is the week of September 8th thus creating further delay if Mother's request for hearing is allowed.  Father's co-counsel is on maternity leave with a three week old baby and thus unable to argue the motion.

Date:  August 31, 2025                    Respectfully submitted,
                                          **Tommy Giguére,**
                                          By his attorneys,

                                          /s/ *Wendy O. Hickey*
                                          Wendy O. Hickey, #657457
                                          Brick, Jones, McBrien & Hickey, LLP
                                          250 First Avenue, Suite 201
                                          Needham, MA  02494
                                          (617) 494-1227
                                          whickey@brickjones.com


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the within Opposition to Motion for Stay was this day served upon Respondent's counsel, Matthew Barach, via the Court's CM/ECF system and email to mbarach@barachfamilylaw.com this 31st day of August, 2025

                                          /s/ *Wendy O. Hickey*
                                          Wendy O. Hickey, #657457
                                          Brick, Jones, McBrien & Hickey, LLP
                                          250 First Avenue, Suite 201
                                          Needham, MA  02494
                                          (617) 494-1227
                                          whickey@brickjones.com